**David THOMPSON, on his own behalf and on behalf of others similarly situated, David N. Williams, Belarmino C. Crisostomo, Sr., Warren S. Edwards,**

**v.**

**Davis W. OWENS, Jr., Commissioner of Corrections; Joseph Mazurkiewicz, Superintendent; D.A.CO Leathers, III; William A. Kupchella, Hearing Examiner/Coordinator; Anthony De Angelo, Deputy Superintendent for Operations; Edward Brennan, Deputy Superintend-**

ent for Treatment; John McCullough, Classification & Treatment Manager, Appellees.

## Appeal of David THOMPSON, David Williams, and Warren S. Edwards, Appellants.

### No. 89–5149.

United States Court of Appeals, Third Circuit.

Argued July 11, 1989.

Decided Nov. 15, 1989.

Robin Jean Foor (argued), Keystone Legal Services, Inc., State College, Pa., for appellant.

Ernest D. Preate, Jr., Atty. Gen., Calvin R. Koons (argued), Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Harrisburg, Pa., for appellees.

Before HIGGINBOTHAM, BECKER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Appellant David Thompson, an inmate confined at the State Correctional Institution at Rockview, Pennsylvania, brought this civil rights class action in the district court for the Middle District of Pennsylvania against various correctional officials, complaining that his due process rights had been violated by the officials' failure to provide complete chain of custody evidence at his misconduct hearing. Appellant tested positive on his urinalysis drug test and was convicted of misconduct. As a result of the conviction, appellant suffered a significant loss of benefits. He alleged in his complaint that, because there was no evidence of the chain of custody of his urine sample, test results based upon it could not be placed into evidence in the record of proceedings. Adopting the Magistrate's report, the district court dismissed the complaint, concluding that despite the absence of "chain of custody" evidence, the positive results of appellant's urinalysis tests amounted to "some" evidence sufficient to support a finding of misconduct and to satisfy due process (App. 49–55).

The quantum of evidence necessary in the context of prisoner disciplinary proceedings was described by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985):

We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was *some evidence* from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this

standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that *could* support the conclusion reached by the disciplinary board...." *We decline to adopt a more stringent evidentiary standard as a constitutional requirement.*

*Id.* at 455–56, 105 S.Ct. at 2774 (emphases added and citations omitted). This case is controlled by *Hill.*

Appellant does not allege that prison officials tampered with the samples. Nor does he allege that the prison officials failed to follow their own procedures.[1] Appellant merely argues that if officials do not submit a complete chain of custody account for the samples, any test results based on those samples must be considered unreliable. However appealing this argument may be, it does not present a viable constitutional claim. The due process requirements in this context are minimal, and they are met here. Positive urinalysis results based on samples that officials claim to be appellant's constitute *some* evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an "independent assessment" into the reliability of the evidence, and *Hill* tells us, explicitly, that such a "credibility" determination is not required. *See id.* at 455, 105 S.Ct. at 2774.

The judgment of the district court will be affirmed.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.

Common sense and a concern for fairness are the prerequisites for any rational administrative process. Our common experience teaches us that through mere negligence administrative errors can occur in the processing of files or specimens; such errors can occur without any intent to tamper or to create erroneous results.

Our civil dockets are burgeoning with allegations that patients have become ill and that some have even died because of an error in test results or because the laboratory's "findings" were attributed to the wrong patient. Prison administrators are not immune to the "foul ups" that occur in all other organizations. Human errors are possible everywhere. Thus, a careful administrator on his or her own would develop specific guidelines to establish an unmistakable chain of custody in order to avoid injury to the innocent.

While I am concerned with common sense and administrative responsibility, the Supreme Court has stressed the wide discretion prison authorities have in dealing with matters of prison security. *See Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979) ("courts should ordinarily defer to [prison authorities'] expert judgment in such matters [as prison discipline and institutional security]"). Only recently, our Court was reversed in a 5–4 decision by the Supreme Court in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The Court, speaking through Chief Justice Rehnquist again stressed:

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." This

---

**1.** The matter referred to in Judge Higginbotham's concurring opinion was raised by the panel, *sua sponte.*

approach ensures the ability of officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to "resolution by decree."

482 U.S. at 349–350, 107 S.Ct. at 2404 (citations omitted).

The majority on this panel is probably correct that, under the current constitutional standards, the requirement of a chain of custody in cases of this type need not be met, but I hope that prison administrators will consider what is fair and not merely what avoids constitutional infraction. The "some evidence" standard articulated by the majority means necessarily that there is always the substantial possibility that an injustice is done because a test result is inaccurate or the wrong specimen got into the "chain of custody." But the teaching of *Shabazz* is that the real possibility of a mistake by the laboratory in its chain of custody does not warrant any safeguards to prevent injustices to inmates who desire to challenge the results by requiring defendant to establish proof in the chain of custody.

In response to our inquiry at oral argument, the Attorney General has replied:

The Department of Corrections Request for Proposal dated February 6, 1987, pursuant to which a contract for laboratory testing services was awarded [provided in] paragraph 7(D) of the document ... that a chain of custody procedure be used for all drug/alcohol screening requests.

If the appellees *are not* implementing the Department's own policy, one must ask why would anyone with a sense of fairness would not faithfully follow its own rules when a person's liberty is at stake. If the appellees *are* making certain that these procedures are being complied with, it is surprising that they did not want to provide evidence as to the chain of custody when the issue was raised. While the appellees' conduct is a scintilla short of unconstitutionality under the strictures of *Bell v. Wolfish* and *Shabazz*, it is my hope that the appellees and their counsel will recognize that winning a lawsuit is not the equivalent of an affirmation that they have been fair or that they have exemplified that important but rare quality—common sense.

I concur in the judgment of affirmation.