**Michael J. ELKIN**

v.

**William H. FAUVER, E. Calvin Neubert, Donald Mee, Jr., Appellants.**

**No. 91–5896.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 3, 1991.

Decided July 13, 1992.

Rehearing and Rehearing In Banc Denied Aug. 7, 1992.

Robert J. Del Tufo, Atty. Gen. of N.J., Trenton, N.J., (Joseph L. Yannotti, Asst. Atty. Gen., of counsel; Brett D. Rickman, Deputy Atty. Gen., on the brief), for appellants.

Michael J. Elkin, pro se.

Before: BECKER, ALITO, and ROTH, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Michael J. Elkin, a prisoner at New Jersey's Bayside State Prison, was found guilty and sanctioned for a disciplinary infraction based on a drug test that indicated the presence of opiates in a sample of his urine. Elkin then filed this action in feder-

al court under 42 U.S.C. § 1983 against the Commissioner of the New Jersey Department of Corrections, the Prison Administrator, and the hearing officer who presided at his disciplinary proceeding. The district court found the defendants in civil contempt, holding that the chain-of-custody form used by the prison in connection with the collection and testing of Elkin's sample did not comply with previous district court orders. The court ordered that all sanctions against Elkin be vacated and that the Commissioner pay Elkin a compensatory fine. Because it is apparent that the defendants' failure to comply with the technical requirements of the prior orders had no effect on Elkin, we reverse.

## I.

A. In order to understand the present case it is necessary to examine several previous cases in the United States District Court for the District of New Jersey concerning procedures for ensuring the accuracy of drug tests administered to state prisoners. In 1984, in *Denike v. Fauver,* Civ. Action No. 83–2737 (D.N.J. filed May 14, 1984), a class of inmate plaintiffs and New Jersey officials entered into a consent decree specifying detailed drug testing procedures; these procedures are now embodied in state regulations, N.J.Admin.Code tit. 10A § 3–5.9 to 5.11. For present purposes, only one provision of the consent decree is significant. This provision states that after a urine sample is collected it must be placed in a refrigerator and

> the officer who receives custody of the urine sample shall make a written record of the date and time he received the sample, the officer from whom it was received, and the date and time of its placement into the evidence locker and/or locked refrigerator.

App. at 159. *See also* N.J.Admin.Code tit. 10A § 3–5.10(c)(2).

After the *Denike* consent decree, prisoners who failed drug tests began filing section 1983 suits claiming that the procedures set out in the decree had not been followed. In one such case, *Duffy v. Fauver,* Civ. Action No. 90–1450 (D.N.J. filed Sept. 24,

1990), the district court held that the chain-of-custody form used by the Department of Corrections (Form 172–I—"Continuity of Evidence—Urine Specimen Form") did not comply with the above quoted provision of the decree. This form, the same one used in the present case, contains spaces for recording the names of (a) the corrections officer who witnesses the voiding, (b) the officer who places the sample in the "satellite" refrigerator (i.e., the refrigerator near the prison unit where the sample was voided), (c) the officer who removes the sample from the satellite refrigerator, (d) the officer who places the sample in the main prison evidence refrigerator, (e) the officer who removes the sample from that refrigerator, (f) the officer who transports the sample to the department laboratory, (g) the officer who receives the sample at the department laboratory, (h) the officer who transports the sample from the department laboratory to a private laboratory for confirmatory testing, and (i) the person who receives the sample at the private laboratory. The district court faulted this form, however, because it lacks spaces for the names of the officers who transport a sample from the place of voiding to the satellite refrigerator and from the satellite refrigerator to the main refrigerator. Thus, if officer A collects a sample, officer B takes the sample from A and carries it to the satellite refrigerator, and officer C takes the sample from B and places it in the refrigerator, officer B would have no place on the form to sign his name. The court therefore entered an order in late September 1990 requiring the defendants in that case to revise the form "to add a space for identification of the officer from whom a urine sample is received when it is placed in the evidence refrigerator." *Duffy* at 12.

The Department of Corrections prepared such a revised form by December 1990 but, as the district court explained, this matter "was lost in the bureaucratic shuffle and the form was not ultimately revised until early summer 1991." *Elkin v. Fauver,* Civ. Action No. 91–2092 (D.N.J. filed Sept. 27, 1991) at 7. In the meantime, the events giving rise to the present case took place.

B.  On March 12, 1991, a syringe was found in a common area of cottage 3 at Bayside State Prison.  As a result, Elkin and the other prisoners assigned to that cottage were ordered to provide urine samples for drug testing.  All of the significant events that followed were recorded on a copy of Form 172–I.  In addition, these events were confirmed by testimony at trial before the district court.

At 7:23 p.m. on March 14, Officer Murray witnessed Elkin's voiding of the sample.  Officer Murray and Elkin both signed spaces on the form indicating that Murray had closed, sealed, and labeled the jar in Elkin's presence.  Officer Murray then put the jar in a plastic bag and heat sealed the jar.  At 7:30 p.m., Officer Murray placed the sample in the satellite refrigerator.

After completing the process of collecting samples from the other inmates in the cottage, Officer Murray removed the sealed bag containing Elkin's sample from the satellite refrigerator.  He then took the sample to the main evidence refrigerator and placed it in that refrigerator at 10:25 p.m.

On March 20 at 7:40 a.m., the sample was removed from the refrigerator by another corrections official, and at 8:50 a.m. the sample was taken to the Department laboratory, where it arrived at 12:00 p.m.  Tests performed at the Department laboratory yielded positive results.  On April 3, the sample was removed from the Department laboratory at 5:40 p.m. and taken to a private laboratory for additional testing.  These tests confirmed the presence of opiates.

Elkin was then charged with a disciplinary infraction, using illegal narcotics in prison, in violation of N.J.Admin.Code tit. 10A § 4–4.1(a)(.204).  After a proceeding before Hearing Officer Donald Mee, Jr., Elkin was found guilty.  As a sanction, he was given a period of administrative segregation, and he lost commutation credits.

He then filed this action.  By this time, the state had begun to use the new chain-of-custody form required in *Duffy*.  Nevertheless, the court, after a bench trial, held the defendants in civil contempt for failing to use such a form with respect to Elkin's sample.  The court rejected the defendants' harmless error argument, although the court did not dispute that the chain of custody for Elkin's sample was unbroken and that the only effect of complete compliance with *Duffy* in this case would have been that Officer Murray "would have signed his name in another space."  *Elkin* at 5.  The court reasoned that "if the information was unimportant, this court would not have ordered that space be provided for it to be recorded."  *Id.*  The court also rejected the defendants' argument that the delay in complying with the *Duffy* order did not justify contempt sanctions.

The court concluded that the state had "failed to demonstrate that it exercised reasonable diligence" in complying with the *Duffy* order.  *Id.* at 7.  The court therefore ordered that all of Elkin's sanctions be vacated and that the infraction be expunged from his records.  In addition, the court fined Commissioner Fauver $825 in his official capacity and ordered that the fine be paid to Elkin as compensation for time spent in disciplinary detention and administrative segregation.  The defendants appealed.

## II.

A.  Elkin's complaint attempted to state a claim under 42 U.S.C. § 1983 and alleged that the defendants had violated his rights under the Fourth, Fifth, and Fourteenth Amendments.  Under our decision in *Thompson v. Owens*, 889 F.2d 500 (3d Cir.1989), however, it is clear that the evidence in Elkin's disciplinary proceeding regarding the chain of custody of his urine sample amply satisfied constitutional requirements.  In *Thompson*, we held that these requirements are met if there is "some evidence" in the record of the disciplinary proceeding showing that the sample belonged to the inmate charged with the disciplinary infraction.  *Id.* at 502.  We wrote that the "due process requirements in this context are minimal."  *Id.* at 501.  In the present case, not only was there "some evidence" that the sample was Elkin's, but the state's chain-of-custody evi-

dence fully satisfied the standards applicable in a court proceeding. *See* Fed.R.Evid. 901; *United States v. Hon,* 904 F.2d 803, 809–10 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991); *United States v. Ladd,* 885 F.2d 954, 956–57 (1st Cir.1989). Thus, it is clear that there was no constitutional violation.

■ Elkin argues that the state did not comply with its own regulations regarding documentation of the chain of custody. An alleged violation of state law, however, does not state a claim under section 1983. *See, e.g., Kasper v. Board of Election Comm'rs,* 814 F.2d 332, 342 (7th Cir.1987).

■ B. The district court did not base its decision on a violation of the Constitution or any other provision of federal law, but on violations of the orders entered in *Denike* and *Duffy.* The court held that these violations constituted civil contempt and imposed sanctions. Even if we assume that Elkin could assert rights under the orders entered in *Denike* and *Duffy* and that the adjudication of civil contempt was proper,[1] we are nevertheless convinced that the sanctions imposed by the district court may not be sustained.

■ The framing of sanctions for civil contempt is committed to the sound discretion of the trial court. *See, e.g., United States v. United Mine Workers,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir.1990). But this discretion is not unlimited. Compensatory sanctions, such as those imposed by the district court in this case,[2] must not exceed the actual loss suffered by the party that was wronged. *United Mine Workers,* 330 U.S. at 303–04, 67 S.Ct. at 701; *McDonald's Corp. v. Victory Invs.,* 727 F.2d 82, 87 (3d Cir.1984). Moreover, as the Supreme Court recognized in *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 632, 107 L.Ed.2d 644 (1990), civil contempt sanctions should be tailored so that they do not unduly harm broader public interests. Thus, in the present case, the strong public interest in the enforcement of prison disciplinary rules—rules that play a vital role in maintaining institutional safety and order[3]—must be carefully considered.

1. The defendants have not challenged Elkin's standing to assert rights under the *Denike* and *Duffy* orders, but we have an independent obligation to ensure that federal jurisdiction is present in cases that come before us. *See, e.g., Bolden v. SEPTA,* 953 F.2d 807, 812 (3d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). It is apparent that Elkin possessed Article III standing because the disciplinary sanctions imposed upon him constituted injury in fact. *See Whitmore v. Arkansas,* 495 U.S. 149, 156–61, 110 S.Ct. 1717, 1723–26, 109 L.Ed.2d 135 (1990). Whether Elkin met prudential standing requirements, i.e., whether he could assert rights under the *Denike* and *Duffy* orders, is less clear. *See, e.g., Valley Forge Christian College v. Americans United For Separation of Church & State,* 454 U.S. 464, 472–75, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700 (1982); *Amato v. Wilentz,* 952 F.2d 742, 748–50 (3d Cir.1991). *See also Lasky v. Quinlan,* 558 F.2d 1133 (2d Cir.1977); *Spangler v. Pasadena City Bd. of Ed.,* 537 F.2d 1031, 1032 (9th Cir.1976). While Elkin was a member of the class certified in *Denike,* he was not a party in *Duffy,* the case in which the court set out the specific requirement that was violated here. In any event, we do not think that we need to address this prudential standing question. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 237, 110 S.Ct. 596, 610, 107 L.Ed.2d 603 (1990) (rejecting constitutional claim on the merits without reaching prudential

standing issue); *Craig v. Boren,* 429 U.S. 190, 193–94, 97 S.Ct. 451, 454–55, 50 L.Ed.2d 397 (1976) (prudential standing not jurisdictional). *See also Norton v. Mathews,* 427 U.S. 524, 530–31, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976) (in appropriate case, jurisdictional issue need not be decided where case can be alternatively decided on merits in favor of the same party). *United States v. Weathersby,* 958 F.2d 65 (5th Cir.1992); *Wolder v. United States,* 807 F.2d 1506, 1507 (9th Cir.1987).

2. Sanctions for civil contempt may be coercive or compensatory. *Sheet Metal Workers v. EEOC,* 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986); *McDonald's Corporation v. Victory Invs.,* 727 F.2d 82, 87 (3d Cir.1984); *Quinter v. Volkswagen of America,* 676 F.2d 969, 975 (3d Cir.1982). Here, the state was in full compliance with the *Duffy* order prior to the imposition of sanctions, and it is apparent that the sanctions were intended to be compensatory.

3. *See, e.g., Superintendent v. Hill,* 472 U.S. 445, 454–55, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 562–63, 94 S.Ct. 2963, 2977–78, 41 L.Ed.2d 935 (1974). *See also Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984); *Hewitt v. Helms,* 459 U.S. 460, 473,

Applying these standards, we hold that the first sanctions selected by the district court in this case—vacating all of the punishment imposed on Elkin for illegal drug use in prison and expungement of his record—are not consistent with the sound exercise of discretion. We agree with the Second Circuit, which recently considered a virtually identical issue. In *Powell v. Coughlin*, 953 F.2d 744 (2d Cir.1991), the district court had found that the hearing officer at a prison disciplinary proceeding had violated a prior court order establishing procedural requirements for such proceedings. As a sanction, the district court had overturned the disciplinary adjudication and had ordered expungement of the prisoner's record without inquiring whether the violation had had any effect upon the outcome of the proceeding. In reversing the district court, the Second Circuit wrote:

> The District Court has been proceeding on the assumption that the appropriate remedy for every instance of procedural irregularity in the conduct of a disciplinary hearing is a reversal of the outcome and expungement of the adverse findings. The concept of harmless error is entirely absent from the review process conducted by the District Court. We think this approach fundamentally misconceives the appropriate role of a court in maintaining compliance with constitutional standards in the context of prison disciplinary proceedings.

*Id.* at 750. The court concluded:

> In the absence of a recent pattern of violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial. If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, *see Arizona v. Fulmi-*

*nante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.

*Id.*

We agree with this analysis, and we believe that it requires the reversal of the portions of the district court order vacating Elkin's disciplinary sanctions and requiring the expungement of his record. The use of the 172–I form in this case was utterly harmless. The form contained a complete record of the chain of custody of Elkin's sample from the moment of voiding through the second confirmatory test at the private laboratory, and there is no evidence that the sample tested was not Elkin's or that the sample was altered. Had the form required in *Duffy* been in use at the time, Elkin's disciplinary proceeding would not have been affected in the slightest. Elkin was thus properly found to have committed the disciplinary violation with which he was charged—a serious violation with important implications for the maintenance of order and security in the institution. *See Hudson v. Palmer*, 468 U.S. 517, 527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (drug use is "one of the most perplexing problems of prisons today"). Therefore, since Elkin suffered no harm and since the overturning of his disciplinary adjudication and expunging of his record tend to undermine the public interest in the proper enforcement of prison disciplinary rules, we hold that those sanctions are not justified.

We reach the same result with respect to the $825 fine that Commissioner Fauver was ordered to pay in his official capacity.[4] Commissioner Fauver was or-

---

103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983); *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977).

**4.** Elkin seems to suggest that the state's challenge to this portion of the district order is moot

because the fine has been paid. However, payment of a judgment does not moot an appeal contesting the judgment. *See, e.g., Cahill v. New York, N.H. & H.R. Co.,* 351 U.S. 183, 184, 76 S.Ct. 758, 759, 100 L.Ed. 1075 (1956); *Porter v. Lee,*

dered to pay this fine to Elkin to compensate him for time spent in disciplinary detention and administrative segregation as a result of the disciplinary charge and adjudication. Accordingly, this compensation was predicated on the district court's conclusion that Elkin had been improperly adjudicated to have committed the disciplinary violation. Because we hold that the disciplinary adjudication should not have been overturned, we see no basis for compensating Elkin. As previously noted, a compensatory civil contempt fine must be based on the actual loss suffered by the party that has been wronged. *United States v. United Mine Workers*, 330 U.S. at 303–04, 67 S.Ct. at 701; *McDonald's Corp. v. Victory Invs.*, 727 F.2d at 87. Here, Elkin suffered no wrongful loss and is consequently entitled to no compensation.

We do not condone the state's tardiness in complying with the order in *Duffy*, which the state chose not to appeal. Nevertheless, we hold that the compensatory sanctions imposed by the district court cannot be sustained.

The judgment of the district court is therefore reversed.

### SUR PETITION FOR REHEARING

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO and ROTH, Circuit Judges.

The petition for rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed.  1199 (1946).