Juan PIERCE, Petitioner,

v.

Danny R. McBRIDE, Respondent.

Ronald W. EVANS, Petitioner,

v.

Danny R. McBRIDE, Respondent.

Jeffrey A. MERRICK, Petitioner,

v.

Danny R. McBRIDE, Respondent.

Nos. 3:93cv317AS, 3:93cv366AS, 3:93cv617AS, 3:93cv501AS, 3:93cv459AS, 3:93cv442AS and 3:93cv589AS.

United States District Court, N.D. Ind., South Bend Division.

May 27, 1994.

Juan E. Pierce, pro se.

Diane Marger Moore, Office of Indiana Atty. Gen., Indianapolis, IN for respondent.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

In each of the abovecaptioned cases, the petitioner has filed an action seeking a writ of habeas corpus under 28 U.S.C. § 2254. All of the abovecaptioned petitioners are appearing *pro se,* and all petitioners are challenging the constitutionality of prison disciplinary proceedings. The abovecaptioned petitioners are all challenging the drug testing program referred to as the Random Urinalysis Program ("Program"). The Program was initiated on November 9, 1992, by Commissioner DeBruyn through Executive Directive # 92–18 for the Indiana Department of Corrections. The Program established the requisite procedures for the selection of inmates to be tested, instructions for obtaining samples, and instructions on the chain of custody.

This court issued a Memorandum and Order on March 3, 1994. In evaluating several of the § 2254 petitions in that Memorandum and Order, this court indicated that much of the challenged conduct relating to the administration of the Program and issues pertain-

ing to the chain of custody fell under the aegis of harmless error. In so doing, this court relied extensively on the Third Circuit opinion of *Elkin v. Fauver,* 969 F.2d 48 (3rd Cir.1992). In addressing many of the same administrative and procedural problems, the *Elkin* court applied the doctrine of harmless error. In *Elkin,* the court also indicated that *"in the absence of a recent pattern of violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding . . . ." Id.* In the Memorandum and Order of March 3, 1994, this court instructed the Attorney General of Indiana to brief this issue in light of what this court ascertained may be a "pattern of violations." Specifically, this court indicated:

> However, this court is now beginning to see a pattern in many of the petitions. Many of the prison officials involved in the abovementioned cases appear to be unconcerned about the procedures specifically outlined in the Program for the administration of urinalysis.

> This court notes that the "pattern of violations" center on a specific juncture in the urinalysis process. This juncture occurs when the prison official and the inmate interact to process the sample. The Program mandates that the sample be processed in the presence of the inmate, and this interaction is memorialized by filling out a "Form 36." Specifically, this court is concerned about the fact that many of the petitioners repeatedly indicate that the prison officials handling the sample fail to seal and label the samples in the presence of the particular inmate as required by the Program. In addition, much of the accompanying paperwork is not filled out according to the requirements of the Program.

*See Memorandum and Order* of March 3, 1994. In addition, this court also explained that "[t]his court is very cognizant of the deleterious effects of federal judicial intervention into the administration of the Indiana prison system, yet this court can not apply the doctrine of harmless error if a 'pattern of violations' is emerging." *Id.*

On May 2, 1994, the Attorney General filed a brief entitled "Respondents' Memorandum of Law Regarding the Procedures Employed at Westville Correctional Center in Compliance with the Indiana Department of Correction Urinalysis Program." In the brief, the Attorney General outlines the history of the Program beginning with this court's decision in *Laird v. McBride,* 858 F.Supp. 822 (N.D.Ind.1993). The Attorney General explains:

> All of the samples taken, and at issue here, were taken within the first seven months of the testing program at Westville. The first time that Westville Correctional Center was put on notice that this Court deemed the failure of prison officials to require the offenders to initial the Form 36 (Laboratory "chain of custody" form), was when this Court entered its Memorandum and Order in *Laird. Laird* was decided on September 30, 1993, and the decision was received by Respondent's counsel approximately one week later. The *Laird* decision was the initial notice from a Court that it might constitute error to sanction an offender through the CAB process where offenders' initials were not being uniformly required on ... Form 36[ ] at WCC. All of the sanctions under review in this matter were imposed before the *Laird* decision.

> In June of 1993, in order to ensure that there would be uniformity in the taking and testing of samples, one officer, Sgt. Michael Reeves, was assigned to take all of the samples at WCC. Reeves began taking samples in July 1993 and consistently requires offenders to initial Form 36s or notes their refusal. In addition to the decision to have a trained and experienced officer as the only person to take random urine samples, and in response to this Court's concerns, as expressed in its Memorandum and Order dated March 3, 1994, the Indiana Department of Correction has implemented an additional "failsafe" procedure to ensure compliance with the procedures they have recommended for prison urinalysis testing. The new protocol is described in a memorandum dated March 31, 1994, directed to the superintendents of all participating prisons. As of April 21, 1994, the laboratory that conducts the drug testing will no longer test any sample unless both the label on the bottle and Form

36 have been initialed by the offender or there is a notation that the offender refused.

In every instance where a sample was used in evidence at the CAB, the sample was taken in the presence of an officer, placed into a marked and labeled container and stored until it was taken by courier to the lab. As to each sample there was a chain of custody form that indicated the person that had observed the sample being deposited into the bottle, that took possession of the sample, and the time and date that the sample was taken. In addition the form shows all persons who received the sample, the date and time of receipt, the person performing the testing procedure(s) on each sample, test results and the name and offender number of the donor.

*See Respondents' Memorandum of Law Regarding the Procedures Employed at the Westville Correctional Center in Compliance with the Indiana Department of Correction Urinalysis Program.*

After reviewing the history of the implementation of the Program, the Attorney General argues that "[f]ailure to strictly comply with the procedures set forth in the IDOC urinalysis testing program as to the initialing of Form 36s does not state a cause of action under 28 U.S.C. § 2254 for several reasons: (1) The program did not make it mandatory for an offender to initial the Form 36 documents, therefore a failure to require the offender to initial did not violate the procedure; (2) constitutional Due Process does not require that offenders initial their samples and the creation of the procedural guidelines of this testing program did not create any liberty interest in the procedure(s); (3) any deviation from the program, if error, is harmless where there is no persistent and stubborn refusal by the WCC staff to comply with the procedures; and (4) any error in the chain of custody of a sample goes to the weight of the evidence which is only subject to judicial review if the court determines that the CAB acted in violation of the 'some evidence' requirement." *Id.*

■ This court notes that a procedural due process claim may be foreclosed by cases such as *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), and *Wallace v. Robinson,* 940 F.2d 243 (7th Cir.1991). Recently, in *Noland v. Wheatley,* 835 F.Supp. 476 (N.D.Ind.1993), Judge Miller explained that "a procedural due process claim must be based on the denial of constitutionally-defined procedural protections with respect to deprivation of a state-created property or liberty interest; a claim of denial of a state-created procedure does not state a federal claim." *Id.* This court notes that this issue need not be decided here because this court held that the "harmless error" analysis was applicable to the abovecaptioned petitioners. However, "harmless error" has the potential to become the basis of a constitutional claim under § 2254 if repetition of the disputed act continues unchecked by any circumspection or prudence. Here, the prison officials adjusted the Program in response to this court's concerns and the petitioner's actions filed under 28 U.S.C. § 2254.

This court notes that the abovementioned petitioners challenge the drug testing procedures and ultimately the CAB decisions resulting from the abovementioned drug testing Program. Whether or not this is actionable under § 2254 depends on the viability of the procedural due process claim. Unquestionably, on the issue of procedural due process, this court must look to the seminal cases of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In *Wolff,* "the loss of good time credits ... was created by state statute[, and a]s such, it qualified as a liberty interest protected by the Constitution." *James J. Gobert & Neil P. Cohen, Rights of Prisoners* (§ 8.02 When Due Process is Required) at 229. In the procedural due process analysis, it is manifest that "due process protections are necessary ... when rights are threatened which are either created by statute, state regulation, or by an express provision of the Constitution." *Id.*

■ The process of ascertaining whether a liberty or property interest is contained in a statute or state regulation is rather nebulous. Assuming *arguendo,* this court found a liber-

ty interest in the Department of Correction regulations for drug-testing, this court could not provide further procedural protections than those followed at the CAB hearing conducted for each and every one of the abovementioned petitioners. In *Arnett v. Kennedy*[, 416 U.S. 134, 153–54, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974),] "a minority of the Supreme Court stated that 'where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right a litigant ... must take the bitter with the sweet.'" *Id.* at 232. However, "[s]ix justices rejected this position, reasoning that the contents of due process are to be defined by the Constitution." *Id.* More importantly, in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court defined this issue further. In *Vitek*, in considering the due process ramifications of a transfer of a prisoner to a mental hospital, "[t]he Court looked to the relevant state statute in reaching its conclusion that a liberty interest was implicated, but ignored the procedural protections afforded by the statute in determining what process was due." *Id.* "The answer to that question, said the majority, is dictated by the Constitution." *Id.*

This is dispositive because the procedural protections outlined in *Wolff* and *Hill* were followed in the various proceedings at issue here. In each of the abovementioned proceedings, the prison officials followed the mandates of *Wolff,* and therefore, the critical aspects of procedural due process—notice of the charges and an opportunity to be heard.

On the issue of due process, this court notes that in *Thompson v. Owens*, 889 F.2d 500 (3rd Cir.1989), the Third Circuit evaluated the due process ramifications of this issue in light of *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In *Thompson,* the court considered whether the failure of certain prison officials' to provide complete chain of custody evidence at a misconduct hearing violated due process. In *Thompson,* the inmate "tested positive on his urinalysis drug test and was convicted of misconduct [and] ... suffered a significant loss of benefits." *Id.* The inmate "alleged in

his complaint that, because there was no evidence of the chain of custody of his urine sample, test results based upon it could not be placed into evidence in the record of proceedings." *Id.* In prior proceedings in *Thompson,* the district court "conclud[ed] that despite the absence of 'chain of custody' evidence, the positive results of appellant's urinalysis tests amounted to 'some' evidence sufficient to support a finding of misconduct and to satisfy due process." *Id.*

In considering whether it was proper for the district court to dismiss the complaint, the Third Circuit, speaking through Judge Becker explained:

> The quantum of evidence necessary in the context of prisoner disciplinary proceedings was described by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985):
>
> > We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... We decline to adopt a more stringent evidentiary standard as a constitutional requirement.
>
> *Id.* at 455–56, 105 S.Ct. at 2774 ... This case is controlled by *Hill*.
>
> [The inmate] does not allege that prison officials tampered with the samples. Nor does he allege that the prison officials failed to follow their own procedures. [The inmate] merely argues that if officials do not submit a complete chain of custody account for the samples, any test results based on those samples must be considered unreliable. However appealing this argument may be, it does not present a viable constitutional claim. The due pro-

cess requirements in this context are minimal, and they are met here. Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an "independent assessment" into the reliability of the evidence, and *Hill* tells us, explicitly, that such a "credibility" determination is not required....

*Id.* This court finds the decision in *Thompson* persuasive. This court in *Wykoff v. Resig,* 613 F.Supp. 1504 (N.D.Ind.1985), *aff'd by unpublished order,* 819 F.2d 1143 (7th Cir. 1987), considered a situation very similar to the issue discussed by the court in *Thompson.*

On this issue, in a concurring opinion by Judge Higginbotham in *Thompson,* the court suggests that "a careful administrator on his or her own [should] develop specific guidelines to establish an unmistakable chain of custody" for drug testing of inmates. *Id.* Judge Higginbotham then added "[w]hile I am concerned with common sense and administrative responsibility, the Supreme Court has stressed the wide discretion prison authorities have in dealing with matter of prison security." *Id.* Finally, Judge Higginbotham included a major quotation from Chief Justice Rehnquist in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987):

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: "[When] a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests." This approach ensures the ability of officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to "resolution by decree."

*Id.* (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–50, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987) (citations omitted)).

The language of Chief Justice Rehnquist in *O'Lone* must be considered in the analysis of the claims advanced by the petitioners in this matter. The rampant problem with drug abuse in our prisons is ubiquitous. *See Forbes v. Trigg,* 976 F.2d 308, 313 (7th Cir. 1992); *Storms v. Coughlin,* 600 F.Supp. 1214, 1220 (S.D.N.Y.1984). In fact, as the Attorney General points out, "[r]ecent surveys by the Bureau of Justice Statistics have found that more than 40% of inmates report using illegal drugs on a daily or near-daily basis in the month before incarceration." *See Memorandum in Support of Respondent's Return to Order to Show Cause* (filed in *Pierce v. McBride* on August 31, 1993). "The National Drug Control Strategy emphasizes drug testing through urinalysis as a priority for identifying and monitoring the drug involved offender and encourages all States to implement offender drug testing in their jails and prisons." *Id.* It is clear that measures such as those promulgated by the Indiana Department of Correction are necessary steps in the effort to rid the prisons of illegal drugs. Finally, in light of *O'Lone* and the strong governmental need to prevent or preclude the use of drugs within the prison system, this court finds that the factors requisite to the balancing the competing concerns favor the prison officials and the drug-testing Program.

In light of the foregoing, this court finds that the claims advanced by the abovementioned petitioners are DENIED because of the harmless error analysis contained in *Laird v. McBride, supra,* and *Elkin v. Fauver,* 969 F.2d 48 (3rd Cir.1992). The harmless error analysis is dispositive on this issue because the prison officials in charge of the

drug-testing program altered the procedures to circumvent a "persistent pattern" of the kind outlined by the abovementioned petitioners. This court also finds that the procedural due process concerns of the Supreme Court as outlined in *Wolff* and *Hill* have been complied with in the abovementioned CAB hearings. Therefore, all of the abovementioned cases are **DISMISSED.**

IT IS SO ORDERED.