Larry Dwayne THOMAS, Petitioner,

v.

Danny McBRIDE, Respondent.

No. 3:97CV0497 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

May 4, 1998.

Larry Dwayne Thomas, Westville, IN, pro se.

Martha J. Arvin, Indianapolis, IN, for Respondent.

### MEMORANDUM AND ORDER

SHARP, District Judge.

On July 30, 1997, *pro se* petitioner Larry Dwayne Thomas, an Indiana prisoner confined at the Westville Correctional Facility ("WCF"), filed a petition pursuant to 28 U.S.C. § 2254, dealing with the loss of good time credits at a prison disciplinary hearing. The response filed by the Attorney General of Indiana on October 20, 1997, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). The petitioner filed a Traverse on March 4, 1998, which this court has carefully examined. This court also takes note of its Order of December 5, 1997, and the unverified response by a deputy attorney general thereto on January 27, 1998.

State inmates have a liberty interest in good credit time that cannot be deprived without due process. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Sandin v. Conner,* 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995) (distinguishing between a prison disciplinary that sanction will inevitably affect the duration of the inmate's sentence and a sanction that does not affect the duration of his sentence). Accordingly, Mr. Thomas was entitled to the due process rights enumerated in *Wolff v. McDonnell.* 418 U.S. at 558–59, 94 S.Ct. at 2975–76. Moreover, the disciplinary committee may not find him guilty without some evidence to support the finding of guilt. *Superintendent,*

Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

■ In conducting collateral reviews of prison disciplinary hearings under § 2254, this court must examine the disciplinary hearing record for alleged constitutional errors. See Bell v. Duckworth, 861 F.2d 169 (7th Cir.1988), cert. denied, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). This court, however, does not sit as a trier de novo or as a court of general common law review when reviewing prison disciplinary proceedings, Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir.1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984), nor does it sit to determine questions of state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Kraushaar v. Flanigan, 45 F.3d 1040 (7th Cir.1995).

The parties' submissions establish that on April 21, 1997, a correctional officer asked the petitioner to provide "a urine sample for analysis on a SUSPICION BASIS." Mr. Thomas provided a sample, which the respondent asserts was tested by the AIT laboratories in Indianapolis, Indiana, on April 25, 1997. The sample tested positive for Cannabinoids (THC) in the initial drug screen, IMMUNOASSAY. A second test using the gas chromatography/mass spectroscopy (GS/MS) method confirmed the positive result.

WCF officials used the positive test result as the basis for a disciplinary conduct report against Mr. Thomas for use of any unauthorized narcotic drug or controlled substance. The conduct report was written on May 6, 1997, and was given to Mr. Thomas on May 9, 1997. Mr. Thomas pled not guilty to the charge, and appeared before the conduct adjustment board ("CAB") on May 13, 1997. At the hearing, Mr. Thomas told the board members that he had been in the same room with other inmates who were smoking marijuana and essentially claimed to be a victim of second hand smoke. The CAB found Mr. Thomas guilty based on the positive test result, demoted him in good time earning classification, and revoked earned good time credits.

Mr. Thomas pursued an administrative appeal, but Indiana Department of Correction ("IDOC") officials affirmed the finding of guilt at every stage of the appeal. After exhausting his administrative remedies, as required by Markham v. Clark, 978 F.2d 993 (7th Cir.1992), Mr. Thomas filed his petition for writ of habeas corpus in this court, asserting that the laboratory computer analysis printout was inadequate (grounds one and two); that the chain of custody of the sample was inadequate (ground three); that WCF officials did not follow the IDOC executive directive on how urine samples are to be collected and processed (grounds four and five); that melanin, the skin pigment that makes skin dark, can mimic THC, causing African–Americans to falsely test positive for use of marijuana (grounds six and seven); that the respondent switched to AIT from another laboratory because the other lab "provided too much accurate information on their computer printout" (ground eight); and that the respondent "has created the type of environment which allows for drug trafficking within the institution" (ground nine).

■ Mr. Thomas admits that he did not raise grounds four, five, six, and seven in his administrative appeal. Accordingly, he has procedurally defaulted those claims. Markham v. Clark, 978 F.2d at 995–996. Moreover, grounds four and five state no claim upon which relief could be granted because the question in habeas corpus review is whether procedures followed by prison officials comported with requirements of the Federal Constitution or laws, not whether they comport with state law or departmental guidelines, See Estelle v. McGuire, 502 U.S. at 68, 112 S.Ct. at 480; Kraushaar v. Flanigan, 45 F.3d at 1047–49, and the petitioner has submitted nothing that would support the conclusions asserted in grounds six and seven.

■ Mr. Thomas filed an institutional grievance claiming that respondent McBride created a fertile environment for drug trafficking, as he alleges in ground nine. But a grievance does not constitute fair presentment of an issue to the appropriate prison officials, within the meaning of Markham v. Clark, which requires that Indiana prisoners present their claims to prison officials in the

administrative appeals process that "Indiana has established [as] a corrective process for prisoners aggrieved by disciplinary sanctions." *Markham v. Clark,* 978 F.2d at 995. Moreover, even if this claim had been properly presented in Mr. Thomas's administrative appeal, the court does not believe that it presents a claim cognizable under § 2254.

In grounds one and two, Mr. Thomas asserts that the AIT laboratory computer analysis printout was inadequate, and in ground eight he contends that WCF officials switched to AIT laboratories because the lab they used previously provided too much information on its printout. It does not appear that Mr. Thomas presented the claim that WCF switched labs to avoid accurate reports in his administrative appeal, and he has procedurally defaulted this claim. But even had he not committed procedural default, this ground would state no claim upon which relief can be granted in a § 2254 action.

Mr. Thomas did assert in his administrative appeal that the laboratory report relied on by the CAB did not provide sufficient information, and was inadequate under Federal Rule of Evidence 901. The AIT laboratory report listed several drug classes, each of which is marked as "negative" except for "cannabinoids (THC)," which is marked as "positive." The report also contains other information, such as the "patient's" name, the specimen number, the date the sample was collected, received by the lab, and tested, and the types of tests used to screen the sample and confirm the positive result. Mr. Thomas submits a form from Witham Memorial Hospital Toxicology Laboratory, another lab he asserts has performed testing for the WCF, which provides more information about the chain of custody and shows the initial cutoff in nanograms per milliliter for each drug type. Mr. Thomas suggests that the Witham report form sets the proper standard for reporting positive test results in prison disciplinary proceedings, and that the AIT form is fatally deficient.

The Federal Rules of Civil Procedure, however, do not apply to evidence introduced at prison disciplinary hearings, which are intended to be relatively informal nonadversarial affairs in which the hearing officers normally have no legal training and attorneys do not participate either for the inmate or the state. *See Wolff v. McDonnell,* 418 U.S. at 568–571, 94 S.Ct. at 2980–82. The AIT laboratory report is constitutionally sufficient for the purpose of reporting test results used in prison disciplinary actions.

The centerpiece of Mr. Thomas's petition, and the only claim the court sees as posing a potential violation of the due process guaranteed to him in prison disciplinary hearings involving loss of good time, is the question of the chain of custody of the urine sample that formed the basis of the CAB's finding of guilt. The sample the respondent contends belonged to the petitioner was subjected to a screening test by IMMUNOASSAY with a GC/MS confirming test, which meets the requirements of the due process clause. *Wykoff v. Resig,* 613 F.Supp. 1504, 1512 (N.D.Ind.1985), *aff'd by unpublished order,* 819 F.2d 1143 (7th Cir.1987). Moreover, a positive screening test confirmed by GC/MS constitutes "some evidence" to support a finding of guilt. *Nelson v. McBride,* 912 F.Supp. 403, 407 (N.D.Ind.1996). The only question remaining is whether this petitioner is properly connected with this particular positive sample.

In *Wykoff v. Resig,* this court held that the sensitive process of taking and testing urine samples must comport with the due process standards defined in *Wolff v. McDonnell,* and that the handling and processing of inmate urine samples must:

> be done in such a way as to insure the basic integrity of the system. An inmate has a legitimate liberty interest in the subject matter and has a right to expect minimal due process safeguards to insure that samples are not mishandled by correctional officers. Given the realities of the correctional setting, these procedures must be reasonably definite and must be fully and carefully documented at all stages.

*Wykoff v. Resig,* 613 F.Supp. at 1513.[1]

Wykoff was a prisoner confined at the Westville Work Release Center who was

1. *Wykoff* has found favor in at least two other circuits. *See Spence v. Farrier,* 807 F.2d 753, 756

tested for drug use, but the officials who conducted the test did not maintain a complete or accurate written chain of custody of his urine sample. The work release center officials were ultimately able to reconstruct the chain of custody at trial by elaborate testimony from those who conducted the test or dealt with the sample, but this court noted that their handling of the chain of custody was "less than ideal," and advised IDOC officials that in the future they should follow specific procedures to meet the minimum requirements for establishing a sufficient chain of custody for urine samples. *Wykoff v. Resig,* 613 F.Supp. at 1514. These advisements, distilled to their essence, suggest that prison officials ensure that urine samples are sealed with a tamper proof seal in the presence of the inmate, ensure that the samples are secured in areas with very limited access, and keep a documentary paper trail showing each sample's chain of custody.

Some courts have held that establishing a chain of custody in prison drug testing cases is not necessary to meet the "some evidence" requirement established by *Superintendent v. Hill. See Thompson v. Owens,* 889 F.2d 500, 502 (3d Cir.1989) ("positive urinalysis results based on samples that officials claim to be appellant's constitutes *some* evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an 'independent' assessment into the reliability of the evidence.") On the other hand, at least one court went to the opposite extreme, holding that New Jersey Department of Corrections officials could not rely on test results where the sample's chain of custody failed to comply with very specific guidelines established in a consent decree, and imposed civil sanctions for the failure to comply with those guidelines. *Elkin v. Fauver,* 969 F.2d 48, 50–51 (3d Cir.), *cert. denied,* 506 U.S. 977, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992) (describing the history and content of the consent decree and the district court's decision to enter sanctions).

In *Wykoff v. Resig,* this court steered a middle course, holding that prison officials must connect the prisoner with the sample that tested positive by establishing a chain of custody, but giving considerable leeway to prison officials on how the chain of custody may be proven. The Third Circuit, in *Elkin v. Fauver,* reached the same result when it held that even though prison officials did not comply with the terms of the consent decree, "the evidence in Elkin's disciplinary proceeding regarding the chain of custody of his urine sample amply satisfied constitutional requirements." *Elkin v. Fauver,* 969 F.2d at 51. The court will review Mr. Thomas's claims in light of the standard that prison officials using positive drug test results to deprive an inmate of good time credits must submit sufficient documentation or other evidence to establish a chain of custody of the urine sample provided by the prisoner.

Mr. Thomas sought discovery of the records pertaining to the collection, storage, and transportation of his urine sample. The respondent eventually conceded, in an unverified response, that he "is not in possession of any documents which specifically reflect the whereabouts of" Mr. Thomas's urine sample while it was at the prison. The unverified response went on to describe the "standard procedure" for the collecting, processing, and storage of urine specimens, which is that:

the specimen is collected and sealed in front of the offender. The sample is then

(8th Cir.1986); *Chaney v. Southern Railway Co.,* 847 F.2d 718, 721 (11th Cir.1988). District Courts in the Second, Sixth, Seventh, and Ninth circuits have also cited to this court's decision in *Wykoff* with approval, *See Fowler v. New York City Dept. of Sanitation,* 704 F.Supp. 1264, 1272 (S.D.N.Y.1989); *Lovvorn v. City of Chattanooga, Tennessee,* 647 F.Supp. 875, 877 (E.D.Tenn. 1986); *Holm v. Haines,* 734 F.Supp. 366, 371 (W.D.Wis.1990); *Pella v. Adams,* 638 F.Supp. 94, 97 (D.Nev.1986); *Amalgamated Transit Union, Local 1277, AFL—CIO v. Sunline Transit Agency,* 663 F.Supp. 1560, 1570 (C.D.Cal.1987); *Soto v. Lord,* 693 F.Supp. 8, 19 (S.D.N.Y.1988); as have state courts in Alabama, Idaho, Indiana, Maryland, and New York. *See Martin v. State,* 616 So.2d 384, 387 (Ala.Crim.App.1993); *Works v. State,* 575 So.2d 622, 624 (Ala.Crim.App.1991); *Driver v. State,* 576 So.2d 675, 677 (Ala.Crim. App.1991); *Martin v. State,* 562 So.2d 294, 296 (Ala.Crim.App.1990); *Bourgeois v. Murphy,* 119 Idaho 611, 809 P.2d 472, 474 (1991); *Penrod v. State,* 611 N.E.2d 653, 654 (Ind.Ct.App.1993); *Wilson v. State,* 70 Md.App. 527, 521 A.2d 1257, 1261 (1987); *Lahey v. Kelly,* 71 N.Y.2d 135, 524 N.Y.S.2d 30, 33, 518 N.E.2d 924 (1987); *Vasquez v. Coughlin,* 118 A.2d 897, 898, 499 N.Y.S.2d 461 (N.Y.Sup.Ct.1986).

placed in a transport bag by the offender and the bag is sealed. The double-sealed specimens are then placed in a secured sample box which is collected by designated correctional staff after all the samples are collected for the day. The samples are then taken for storage in a refrigerator in a secure location. The refrigerator is either under staff supervision or the room where it is located is locked. The samples are stored in this manner until AIT laboratories picks them up from WCF.

The procedure described above complies with both the spirit and the letter of *Wykoff v. Resig,* and the other cases holding that prison officials must establish that a sample that tested positive was the sample produced by the inmate when they rely on the positive drug test result to deprive him of good time credits or demote him in good time earning classification. If properly documented, the procedure described in the unverified response would produce a chain of custody for urine samples that would easily pass constitutional muster. The respondent has not, however, provided the documentation necessary to establish that the described procedure was followed in handling Mr. Thomas's sample, or provided affidavits from WCF officials that they followed this procedure when they dealt with his urine sample.

The only chain of custody document provided by the respondent is the laboratory result sheet, which shows that the sample the respondent asserts belonged to the petitioner tested positive. The respondent contends that, even though he cannot provide documentation for the chain of custody prior to the delivery of the sample to the lab, the court should deny the petitioner relief because, "(a)s noted on the laboratory result sheet for specimen number D55342 the labo-

ratory verifies that the seal has not been broken prior to testing the sample."

But the laboratory report actually only states that "(t)he above specimen was received by the lab with valid chain of custody intact." [2] The laboratory report itself does not state what the lab considers to be a valid chain of custody. Moreover, it is the responsibility of the court, not the testing laboratory, to make the final determination of what constitutes a constitutionally adequate chain of custody for urine samples used in prison disciplinary hearings. Before the court can agree with the laboratory's conclusion concerning the chain of custody, the court must know what the laboratory considers a valid chain of custody. If the statement "specimen was received by the lab with valid chain of custody intact," can be read as meaning that the inmate's sample was sealed in his presence with a tamper proof seal and arrived at the laboratory with the seal intact, then the court would be inclined to agree with the laboratory's assessment of the chain of custody's adequacy.

The respondent has thrown in the towel on the question of providing documentation or other evidence establishing a chain of custody for the urine sample they assert that Mr. Thomas provided. Mr. Thomas, however, has attached a document to his petition, marked as exhibit "B," which was prepared by the officer who collected the urine sample from him. The court will also take this document into account in its consideration of the adequacy of the chain of custody of Mr. Thomas's urine sample.

The petitioner's exhibit "B," which the court will refer to as the "collection form," was designed by AIT laboratories. The collection form provides elaborate collection instructions and procedures, including requir-

**2.** The lab report prepared by Witham Memorial Hospital Toxicology Laboratory for another inmate, submitted by Mr. Thomas in support of his effort to show what he believes a lab report should contain, states that the inmate's "sample was received sealed and accompanied by a complete chain of custody which is available upon request." The court has already held that the AIT lab report meets the requirements of the due process clause. But in this case, the additional information provided by the Witham lab would have assisted the respondent. The court presumes that documentation of the chain of custody for the sample collected from Mr. Thomas accompanied the sample to the lab—otherwise AIT laboratories would have had no basis upon which to make its determination that his "specimen was received by the lab with valid chain of custody intact." The court considers it likely that the AIT laboratory, like the Witham laboratory, kept the chain of custody documents submitted to it and that such documents would have been available to the respondent.

ing that the donor's identity be verified, that the specimen be sealed with a tamper proof seal that is initialed and dated by the donor, that the donor sign and date the collection form, that the specimen be sealed in a transport bag, that the transport bag be placed in a transport box, and that a security seal be placed on the transport box. The document also provides sections with spaces for the collecting officer and the inmate to fill in. The first section is entitled "collection information," the second section is for "test information," the third section is entitled "donor information," the fourth section deals with specimen temperature, the fifth section is a donor affidavit, the sixth section is a collector affidavit, and section seven has a space for a representative of the laboratory to sign certifying "that this Specimen(s) has Been Examined Upon Receipt and Handled in Accordance with Applicable Requirements." The procedure described in this document would establish a solid chain of custody for any urine sample.

The copy of the collection form submitted by Mr. Thomas is labeled "Copy 2: Donor Copy," Each section of this document, except section 7, was completed. Section 7 of the petitioner's copy of this document is probably unsigned because it was given to him when the sample was collected, which was before it was shipped to the laboratory. Because Mr. Thomas's copy is labeled as copy two, it follows there was at least one other copy of the form. The institution probably received a copy signed by a laboratory representative, and the laboratory most likely retained a completed copy. A copy of the collection form with section 7 signed by a laboratory representative would obviously have been helpful in establishing an adequate chain of custody.

 Neither of the two documents before the court, the lab report nor the collection document, by themselves establish a valid chain of custody—the lab report because it does not state what the lab considers to constitute a chain of custody, and the collection form because it is not signed by a laboratory representative. When read together, however, the court believes these documents establish a valid chain of custody in this instance.

The most important steps in a chain of custody for prisoner urine samples are that the sample be verified in some manner as having been produced by a particular inmate, that the sample be sealed in the inmate's presence with a tamper proof seal, and that the seal be unbroken when the sample arrives at the testing lab. The collection form's "collection instructions" state in part that the collector is to have the donor initial and date the tamper proof seal, that the collector is to seal the specimen with the tamper proof seal, that the collector is to have the donor sign the affidavit in section 5, and that the collector is to place the specimen into the transport bag and seal the bag. The collector, Robert Sebasta, certified that the specimen was provided by Mr. Thomas "in Accordance with Specified Collection Procedures," and Mr. Thomas signed section 5, which states "I Certify that I Provided My Specimen to the Collector, that the Specimen Container(s) was Sealed in My Presence and that the Information Provided on this Form is correct." The lab report states that the specimen labeled as belonging to Mr. Thomas "was received by the lab with valid chain of custody intact."

The court reads the collection form's collection instructions as defining what the AIT laboratory means by the term "valid chain of custody," and concludes that following the form's collection instructions produces an adequate chain of custody. The donor's copy of the collection form establishes that every step of the collection instructions was followed, and the court concludes that when the lab stated in its final report that Mr. Thomas's specimen "was received by the lab with valid chain of custody intact," it was certifying that documentation accompanying the specimen established that it had been handled in accordance with the collection instructions and that the sample arrived at the laboratory with the tamper proof seal intact.

In *Wykoff v. Resig*, this court noted that Westville Work Release Center officials' handling of the chain of custody was "less than ideal," but concluded that they had adequately established a chain of custody by

testimony. The Westville Correctional Facility officials' handling of the chain of custody documentation for Mr. Thomas's sample was also less than ideal, but from the donor's copy of the collection sheet and the laboratory report, the court is able to conclude that there was an adequate chain of custody for his urine sample. If Mr. Thomas had not submitted his copy of the collection sheet to the court, however, the question would not even be close. Indiana prison officials should not make a habit of relying on prisoners to provide the documentation establishing an adequate chain of custody for urine samples in these types of cases.

For the foregoing reasons, the court holds that Mr. Thomas's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted, **DENIES** this petition, and **DENIES** the petitioner's motion for summary judgment [docket # 17].

**IT IS SO ORDERED.**