MACKLER PRODUCTIONS, INC., Plaintiff,

v.

TURTLE BAY APPAREL CORP., Gotham Apparel Corp., Ron Pat Printing, Inc., Michael Kipperman, Patricia Kipperman, and James J. Clare, Defendants.

No. 92 Civ 5745 DC.

United States District Court, S.D. New York.

Aug. 6, 2001.

**505**

Roy A. McKenzie, New York City, for Plaintiff.

Vivian Shevitz, South Salem, NY, for Frank Cohen.

### MEMORANDUM DECISION

CHIN, District Judge.

In what should be the final chapter of a lawsuit that commenced in 1992, the Court must determine the amount of sanctions to reimpose on Frank Cohen, Esq.—trial counsel for three of the defendants—for causing a defense witness to present false evidence. Specifically, the issue is whether compensatory sanctions, which are awarded to compensate an aggrieved party for injury caused by an attorney's past misconduct or to prevent future misconduct, are appropriate where, as here, the aggrieved party (plaintiff) ultimately prevailed at trial and where its counsel was working on a contingency fee basis.

The district court (Patterson, J.) imposed compensatory sanctions of $45,000 on Cohen in 1997. Since then, the sanctions alone have been the subject of two appeals to the Second Circuit and two remands to the district court. Although there no longer is any dispute as to whether Cohen suborned perjury, he asserts, for the first time, that plaintiff—and, in particular, its counsel—are not entitled to compensatory sanctions because, despite the perjury, plaintiff suffered no injury—plaintiff prevailed at trial and counsel was working on a contingency basis.

As discussed below, because the perjury suborned by Cohen multiplied the trial and the post-trial proceedings—the sanctions hearing and the appeals on the merits and on the sanctions—by approximately 170 hours, and because plaintiff has shown "some proof of loss," I am reimposing compensatory sanctions of $45,000 against Cohen.

### BACKGROUND

Most of the facts relevant to this case have been detailed by the Second Circuit

and the district court in their numerous prior decisions. *See, e.g., Mackler Prods., Inc. v. Cohen,* 225 F.3d 136 (2d Cir.2000); *Mackler Productions, Inc. v. Cohen,* 146 F.3d 126 (2d Cir.1998); *Mackler Prods., Inc. v. Turtle Bay Apparel Corp.,* No. 92 Civ. 5745(RPP), 1999 WL 961987 (S.D.N.Y. Oct. 21, 1999); *Mackler Prods., Inc. v. Turtle Bay Apparel Corp.,* No. 92 Civ. 5745(RPP), 1997 WL 269505 (S.D.N.Y. May 21, 1997); *Mackler Prods., Inc. v. Turtle Bay Apparel Corp.,* No. 92 Civ. 5745(RPP), 1994 WL 267857 (S.D.N.Y. June 14, 1994), *aff'd,* 47 F.3d 1158 (2d Cir.1995). The Court assumes familiarity with these facts and restates them here only to the extent necessary.

### A. *The Sanctionable Conduct*

Cohen represented three of the defendants at the 1993 non-jury trial before Judge Patterson, who ultimately found that defendants "conscious[ly] and deliberate[ly] attempt[ed] to defraud plaintiff" on a clothing apparel contract. *Mackler,* 1994 WL 267857, at *1. At trial, plaintiff contended that defendant Turtle Bay, or its defendant principal, had ordered $69,090 worth of clothing from plaintiff and instructed plaintiff to deliver the clothing to defendant Ron Pat Printing, Inc. ("Ron Pat Printing"). Plaintiff did so, but was never paid for the clothing. Plaintiff's theory of the case turned on establishing facts surrounding defendants' receipt and distribution of the shipment of clothing and the various ownership and operating relationships between the individual and corporate defendants.

Ronald Hoffman, a Ron Pat Printing employee, testified to these issues at trial as a defense witness: he stated that he received and signed for the clothing from plaintiff, and that he passed the clothing on to Turtle Bay; he testified to defendant Michael Kipperman's role at Turtle Bay;

and he testified to the ownership of Turtle Bay. Thereafter, Kipperman testified, echoing Hoffman's testimony and elaborating on the ownership of Turtle Bay. On rebuttal, plaintiff "offered testimony and other evidence that tended to contradict both Hoffman's and Kipperman's assertions." *Mackler,* 225 F.3d at 140.

After entering judgment for plaintiff on the merits of its case, the district court referred the issue of whether Hoffman had committed perjury to the United States Attorney's Office for possible criminal investigation. The court also indicated that, following the investigation, it would consider whether to impose any sanctions on defendants and/or on their counsel.

In September 1996, Hoffman pled guilty to criminal perjury charges. Then, in October 1996, the district court conducted a hearing on the issue of sanctions. The hearing resulted in three factual findings:

> (1) Cohen and Kipperman had caused Hoffman to present false evidence in an effort to disassociate Kipperman from responsibility for the order of [clothing] from Mackler and the delivery of the [clothing] to Ron Pat Printing; (2) that Kipperman gave false testimony, with Cohen's knowledge, to the effect that Turtle Bay was owned by [a third party] and that [one of the individual defendants] had no equity interest in the company; and (3) that Kipperman gave false testimony, again with Cohen's knowledge, to the effect that he himself had no interest in Turtle Bay or in Ron Pat Printing.

*Id.*

Based on these three findings, the district court, relying on its inherent authority, imposed a compensatory sanction of $45,000 on Cohen payable to plaintiff and a $10,000 punitive sanction on him payable to the Court. After the first appeal relating to the sanctions, the Second Circuit

vacated and remanded. On remand, the district court reimposed the $45,000 compensatory sanction, but based the sanction solely on the first two factual findings. In addition, the district court reduced the punitive sanction to $2,000.

## B. *The Second Appeal*

In the second appeal brought by Cohen, the Second Circuit was required "to clarify further the troublesome law concerning sanctions." *Mackler,* 225 F.3d at 139. First, the court held that Cohen did not receive adequate notice with respect to the possibility of sanctions as to the district court's second factual finding—that Kipperman gave false testimony, with Cohen's knowledge, as to Turtle Bay's ownership. Hence, the court held that "insofar as the 'compensatory' sanction was imposed on this basis, it cannot stand." *Id.* at 145. Second, the Second Circuit held that the district court did not abuse its discretion in imposing a compensatory sanction on Cohen based on the first factual finding— "Cohen's role in Hoffman's presentation of false testimony." *Id.* Third, despite holding that the imposition of the compensatory sanction was not an abuse of discretion, the court vacated the sanctions because the court affirmed only the district court's first factual finding and plaintiff did not submit "competent evidence of its claimed fees and expenses." *Id.* at 146.

Accordingly, the Second Circuit remanded for the district court, upon assignment to a different district judge, "to consider whether to reimpose the full $45,000 sanction on Cohen or a sanction of some lesser amount." *Id.* at 146.

On remand, the matter was reassigned to the undersigned.

### DISCUSSION

## I. *Applicable Law*

■ Compensatory sanctions are generally awarded "to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience." *Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir.1989) (citations omitted) (discussing compensatory sanctions in the context of defendants' civil contempt); *accord Hester Indus., Inc. v. Tyson Foods, Inc.,* 985 F.Supp. 236, 244 (N.D.N.Y.1997). Such sanctions may be "warranted ... not merely to compensate [the plaintiff], but to ensure compliance ... in the future. That such relief will have the added effect of vindicating the court's authority in no way suggests that sanctions awarded to [the plaintiff] are punitive and not remedial." *Manhattan Indus.,* 885 F.2d at 6 n. 2 (internal citations omitted); *see also Nudelman v. Siag,* No. 93 Civ. 2587(PKL), 1996 WL 451379, at *4 (S.D.N.Y. Aug. 9, 1996) (noting that compensatory sanctions "may, of course, be both coercive and compensatory" (quoting *New York State Nat'l Org. For Women v. Terry,* 886 F.2d 1339, 1353 (2d Cir.1989) ("*Terry*"))).

■ Although a district court has "broad discretion in fashioning coercive remedies," "[s]ome proof of loss must be present to justify [a sanction's] compensatory aspects." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1062 (2d Cir.1995) (quoting *Terry,* 886 F.2d at 1353–54). Thus, the sanction "should correspond at least to some degree with the amount of damages." *Id.*

The Second Circuit has also explained, however, that "[w]hen awarded as a means of compensation, ... a civil contempt fine is not always dependent on a demonstration of 'actual pecuniary loss.'" *Manhattan Indus.,* 885 F.2d at 5; *accord Twentieth Century Fox Film Corp. v. 316 W. 49th St. Pub Corp.,* No. 90 Civ. 6083(MJL), 1990 WL 165680, at *5 (S.D.N.Y. Oct. 23, 1990). Without proof of "actual injury," the sanctions may be based on the defendant's profits, under a theory of unjust enrich-

ment. *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281, 296 (S.D.N.Y.2000) (citing *Manhattan Indus.*, 885 F.2d at 6). Hence, in such situations, the sanctions are "not punitive"; rather, they "are 'an equivalent or a substitute for legal damages,' when damages have not been shown, and are recoverable 'not by way of punishment but to insure full compensation to the party injured.'" *Manhattan Indus.*, 885 F.2d at 6 (quoting *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 456, 52 S.Ct. 238, 76 L.Ed. 389 (1932)).

## II. *Application*

Here, the Court must consider whether the district court's first factual finding—that Cohen suborned perjury—multiplied the proceedings and, if it did, to what extent. The Court must also determine the effect, if any, the contingency fee agreement between plaintiff and its counsel has on the imposition of a compensatory sanction. Last, the Court must determine the proper amount of the sanction to reimpose on Cohen. I address each of these issues in turn.

### A. *The Suborned Perjury Multiplied the Proceedings*

#### 1. *The Trial*

■ There is little doubt that Hoffman's perjury extended the trial in 1993. First, despite Cohen's contention that the lies were "easily and readily refuted" by plaintiff's counsel, the deconstruction of Hoffman's lies required, among other things, the following: cross-examining Hoffman as to his lies, *Mackler*, 1997 WL 269505, at *3; recalling a prior witness to refute the lies, *id.* at *4; and requiring a witness to compare the signatures of Hoffman and of a shipping clerk. *Id.*

Second, Hoffman's lies formed the underpinning of the lies that followed. Without the suborned perjury, Kipperman's lies

about his and others' ownership interests in Turtle Bay and Ron Pat Printing, which represented almost his entire testimony, would not have had a foundation or any corroboration. As plaintiff's counsel explained to the Court at a hearing on June 27, 2001: "In order to tie in the fact that [Hoffman] printed the goods, [Hoffman] had to lie about the receipt of the goods. But the receipt is the predicate for exonerating ... Kipperman ... and the other defendants." (Tr. at 26–27). Plaintiff focused part of the post-judgment hearings and the appeals on "unravel[ling] that knot." (*Id.*).

Third, there is evidence to suggest that this case would never have gone to trial—or, at a minimum, would not have been as complex—if not for Cohen instructing Hoffman to lie. According to the trial judge, "[t]he defense at trial, as posited in pretrial discovery by Kipperman and Cohen ..., hinged on Hoffman's testimony to support the proposition that (1) [a third party] was an alter ego of Turtle Bay ...; and (2) ... Kipperman was just a sales agent ..., and, thus, Kipperman was not responsible for ordering the [clothing] from Mackler which [was] delivered to Ron Pat Printing." *Mackler*, 1997 WL 269505, at *13 (internal citation omitted). Plaintiff's counsel stated that if Hoffman's testimony were "true, then [plaintiff] would have had no cause of action against any of the other defendants, and its only cause of action would have been against a completely defunct corporation [Turtle Bay]." (Tr. at 26).

As noted by the Second Circuit, in plotting how to prove defendants' case, "[Hoffman], Kipperman, and Cohen had [a] conversation about the goods just prior to the 1993 trial, in which Cohen explicitly instructed Hoffman to testify falsely that he had received and signed for the shipment." *Mackler*, 225 F.3d at 145 (internal quotation omitted). Thus, Cohen proceeded to

trial with a defense strategy based entirely on lies, which provided defendants, other than Turtle Bay, with a "solid defense." *See Mackler*, 1997 WL 269505, at *13. As the record demonstrates, the need for much of the testimony at trial—indeed, the need for a trial at all—could have been eliminated if Cohen and his clients had, in good faith, stipulated to known facts. *See Tedesco v. Mishkin*, 629 F.Supp. 1474, 1486 (S.D.N.Y.1986).

### 2. *Post–Trial Proceedings*

The perjury suborned by Cohen, on its own, has been the subject of a sanctions hearing, two appeals to the Second Circuit, and two remands, including the present proceeding before this Court. While initially all three of the district court's factual findings were the focus of these proceedings, only the first two remained after the first remand. Now, after the second appeal to the Second Circuit, only the first finding of fact—that Cohen suborned perjury from Hoffman—remains. Thus, more than any other of the district court's factual findings, the suborned perjury has kept this case alive for much of the last nine years.

Accordingly, the Court concludes that the suborned perjury clearly multiplied the length and complexity of the proceedings—the trial, the post-trial motions, the sanctions hearing, and the appeals on the merits and, of course, on the sanctions.

### B. *How Much the Perjury Multiplied the Proceedings*

Although plaintiff's counsel does not have specific time records detailing the amount of time he spent on each issue, the absence of such records is understandable as the case was litigated on a contingency

fee basis. *See Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 84 (S.D.N.Y. 1994) ("[I]t was not unreasonable for [plaintiff]'s attorneys to neglect to keep such records based on their contingency fee agreement."). The lack of time records, however, makes it difficult for counsel, as well as for the Court, to set apart the amount of time that the perjury suborned by Cohen multiplied the proceedings.

At the June 27, 2001, hearing, plaintiff's counsel provided an approximate breakdown of his time. First, counsel estimated that the suborned perjury extended the trial "by a half day." (Tr. at 6). Second, counsel explained that after the district court rendered judgment in plaintiff's favor, defendants moved to vacate the judgement, which required briefing and oral argument. Counsel agreed with the Court's observation that, without the suborned perjury, "there would have been less of a basis for making those post-trial motions." (*Id.* at 8). Counsel's "best guess" of how much time he spent briefing and arguing the post-trial motions on the merits was "30 to 40 hours." (*Id.* at 9).

Third, plaintiff filed two sets of briefs on the merits to the Second Circuit, with one oral argument.[1] Although plaintiff's counsel could not identify what portions of the briefs and oral argument specifically related to the suborned perjury, and, thus, he could not set apart the amount of time spent on those issues, counsel agreed that "because of [Cohen's] misconduct there were more issues in terms of the substance flowing from his misconduct." (*Id.* at 11).

The Court also notes that plaintiff's counsel, in his brief, estimates that "Cohen multiplied the proceedings by 320 hours of my time from the sanctions hearing

---

**1.** Upon submission of the first set of briefs, the Second Circuit remanded the case because the district court had not yet decided the punitive damages issue, thus rendering the appeal premature. After the district court decided the issue, the parties submitted a second set of briefs and had oral argument.

through [the second appeal]": attributing 80 hours to the sanctions hearing before the district court; 140 hours to the first appeal of the sanctions; and 100 hours to the second appeal of the sanctions. (McKenzie Decl. ¶ 5; Pl.Mem. at 4–5). According to plaintiff, "[a]ll of this time is attributable to Mr. Cohen." (Pl.Mem. at 5). These figures, however, do not distinguish between the district court's three factual findings of sanctionable conduct. As already noted, the Second Circuit held that the imposition of compensatory sanctions should be based solely on the district court's first finding of fact—that Cohen suborned perjury from Hoffman.

Thus, although there are no time records for the exact breakdown of time spent on the suborned perjury, based on the details listed above and on the Court's experience in confronting these types of matters, the Court concludes that the perjury suborned by Cohen multiplied the proceedings by approximately 170 hours. Attributing more time to the first factual finding because it provided the foundation for the other two findings, and because it remained an issue throughout the posttrial proceedings and is the last finding remaining, the Court derived the 170 hours as follows: five additional hours for the trial; 10 hours for the post-trial motions; 20 hours for the appeal on the merits; 25 hours for the sanctions hearing; 50 hours for the first appeal on the sanctions (including the first remand); and 60 hours for the second appeal on the sanctions (including the proceedings on this remand).

### C. *Contingency Fee Issue*

█ Notwithstanding the amount of time the suborned perjury multiplied the

proceedings, Cohen argues that plaintiff suffered no damages as a result of the perjury—and, thus, he should pay no compensatory sanctions—because plaintiff had a contingency fee agreement with its attorney, which "mean[t] that the fees it paid ... were tied only to its ultimate recovery." (Def.Mem. at 14). Hence, according to Cohen, plaintiff "bore [no] additional expense ... to discredit Hoffman's [perjury]." (*Id.*).[2]

The parties have not provided, and the Court has not found, case law that addresses the effect of a contingency fee agreement on the imposition of compensatory sanctions. The policy behind compensatory sanctions, however, indicates that a contemnor should not escape enforcement of the sanctions simply because of the nature of the fee agreement between the aggrieved party and its counsel. The First Circuit has explained:

> As a deterrent, sanctions speak largely to systemic concerns. Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders.... As compensation, sanctions recognize that a litigant's failure to abide court orders and rules, or his disregard of obligations inherent in the conduct of litigation, harm not only the system but the other participants in the process. Sanctions, then, can have a contrapuntal effect, adjusting the scales so that the extra time, effort, and expense to party "A" which occurs in consequence of the dereliction of party "B" can be repaid in some equitable fashion.

*Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394–95 (1st Cir.1990).

Here, compensatory sanctions adjust the scales to compensate plaintiff—and its attorney—for the "harm" caused by Cohen's

---

2. The Court notes that Cohen did not raise this issue in his most recent appeal to the Second Circuit. (*See* Brief for Appellant, *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136

(2d Cir.2000)). Moreover, the record indicates that he did not raise this issue at any other stage of the proceedings.

actions. Cohen was counsel for three of the defendants in plaintiff's suit; he instructed his first witness, who was called to contradict the core of plaintiff's claims, to perjure himself; he based his clients' entire defense on lies; and, after the perjury became known, he failed to acknowledge his role. Plaintiff, with assistance from counsel, was required to confront, at trial, post-trial, and on appeal, Hoffman's lies and the lies that followed. Moreover, as already noted, the need for a trial at all might have been obviated had Cohen acted in good faith. Thus, notwithstanding the contingency fee agreement, the Court concludes that plaintiff was harmed by the perjury suborned by Cohen.

Cohen's contingency fee argument would enable him to completely avoid compensating plaintiff for suborning Hoffman's perjury. Although the district court entered judgment for plaintiff based on the merits of its case, the judgment did not compensate plaintiff for Cohen's actions. That is why the district court conducted a separate hearing on the sanctions issue.

Cohen's argument also ignores the strong public interest in ensuring that an attorney's conduct does not threaten the administration of justice and the integrity of the judicial process. *See Arnold v. Spanierman,* No. 94 Civ. 2501(DLC), 1996 WL 139796, at *3 (S.D.N.Y. March 27, 1996) (stating that "what is really at stake with the submission of perjurious testimony at trial is the integrity of the judicial process"); *cf. Elkin v. Fauver,* 969 F.2d 48, 52 (3d Cir.1992) (noting that when imposing compensatory sanctions, courts should be mindful of the Supreme Court's recognition that "sanctions should be tailored so that they do not unduly harm broader public interests" (citing *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990))). The Disciplinary Rules expressly prohibit an attorney from using perjured testimony: "In the representation of a client, a lawyer shall not ... [k]nowingly use perjured testimony or false evidence." Model Code of Prof'l Responsibility DR 7–102.A.4; *see also* 18 U.S.C. § 1622 ("Whoever procures another to commit any perjury is guilty of subornation of perjury."). Here, Cohen not only used perjured testimony at trial, he suborned the perjury.

### D. *The Sanction Amount to Reimpose*

█ Having determined that the perjury suborned by Cohen multiplied the proceedings by 170 hours, and that the contingency fee agreement does not negate the policy behind compensatory sanctions, the Court must determine the proper amount of such a sanction.

Plaintiff counsel's present billing rate is $275, which has been his rate "for at least the last couple of years." (Tr. at 13). The Court finds this rate reasonable. At the hearing on June 27, 2001, counsel provided the following oral resume: in 1976, graduated from Yale University, with a Bachelor of Arts; in 1979, graduated from Columbia University School of Law; from 1979 to 1981, served as a *pro se* law clerk in the Second Circuit; from 1981 to 1984, worked as an associate at Davis Polk & Wardwell; from 1985 to 1986, worked as an investment banker and lawyer at Banque Paribas Capital Markets in Paris and in London; from 1986 to 1990, after returning to the United State, started a business developing affordable housing; and, in 1990, became a solo practitioner, specializing in both trial and appellate litigation in both state and federal courts.

Based on this rate, therefore, the perjury suborned by Cohen multiplied the proceedings by $46,750.

### CONCLUSION

As demonstrated above, plaintiff has shown "some proof of loss" as a result of the suborned perjury, and the $45,000

"corresponds at least to some degree with the amount of damages" suffered by plaintiff and its counsel. Plaintiff's contingency fee agreement with its counsel does not preclude an award of sanctions here. Indeed, under these circumstances, the imposition of compensatory sanctions "insure[s] full compensation to the party injured."

Accordingly, the Court hereby reimposes the compensatory sanction of $45,000 against Cohen. The Clerk of the Court shall enter judgment awarding plaintiff compensatory sanctions against Cohen in the amount of $45,000. The case shall then be closed for administrative purposes.

SO ORDERED.