OPINION OF THE COURT
Paul I. Marx, J.
It is ordered that defendant Blustein, Shapiro, Rich & Barone, LLP’s (BSRB) motion for an award of attorney’s fees is granted in its entirety, for the reasons which follow.
By decision and order dated August 23, 2013 (40 Misc 3d 1234[A], 2013 NY Slip Op 51423[U] [2013]), this court granted BSRB’s motion to dismiss and request for sanctions against Joseph E. Suarez, Esq., pursuant to 22 NYCRR 130-1.1,[1] for filing a frivolous claim for breach of fiduciary duty against BSRB in action No. 3. The court found Mr. Suarez’s conduct in asserting the claim against BSRB to be frivolous within the meaning of 22 NYCRR 130-1.1 (c),[2] because it was “completely without merit in law” and was “undertaken primarily to delay or *553 prolong the resolution of the litigation, or to harass or maliciously injure another” (2013 NY Slip Op 51423[U], * 4). It was readily apparent to the court that Mr. Suarez undertook the claim against BSRB in an effort to thwart their efforts to adequately represent The Board of Managers of Foundry at Washington Park Condominium (the Foundry) in action No. 1. Accordingly, the court awarded BSRB attorney’s fees for bringing both the motion to consolidate and/or join action No. 3 with action No. 1 and the motion to dismiss action No. 3,[3] together with costs and disbursements related thereto. BSRB was directed to file an application for said attorney’s fees, costs and disbursements.
In accordance with the court’s order, BSRB submits the instant motion for an award of attorney’s fees, costs and disbursements, seeking to recover the fees and disbursements expended by it and by McDonough Law, LLR[4] the law firm hired by its malpractice carrier to represent it in this action. BSRB seeks recovery of $20,625 ($300 per hour x 68.75 hours) for the time its partner, Gardiner Barone, Esq., spent conducting research and drafting the papers submitted in connection with the motion to dismiss and $305.90 for disbursements. In addition, BSRB seeks recovery of $8,924 ($230 per hour x 38.8 hours) for the time spent by McDonough Law and $122.80 for its disbursements. The total amount sought is $29,977.70.
In partial opposition to the motion, Mr. Suarez seizes the opportunity to again argue against both the court’s decision to grant BSRB attorney’s fees and its separate imposition of sanctions against him.[5] Neither contention is appropriately raised in *554 opposition to the fee award, which is the subject of this motion. The fee award was previously determined to be warranted pursuant to 22 NYCRR 130-1.1 (c). Mr. Suarez did not seek to reargue the court’s decision to award attorney’s fees to BSRB and his opposition to the instant motion cannot be treated as such, because it is procedurally improper. The only determination to be made herein is the proper amount of the fee award.
Mr. Suarez does not contest the hourly rate of either BSRB or McDonough Law or the reasonableness of the hours billed.[6] Essentially, Mr. Suarez contends that BSRB should not be allowed to recover the amount of attorney’s fees McDonough Law charged to BSRB’s insurance carrier for defense of the action, because BSRB is not out-of-pocket for that amount. Mr. Suarez also contends that BSRB should not recover for Mr. Barone’s services, because McDonough Law was the attorney of record and Mr. Barone was merely the client representative.
McDonough Law’s Services
Mr. Suarez’s principal contention[7] is that the court cannot grant an award of fees for McDonough Law’s services unless BSRB is required under its malpractice insurance policy to “indemnify the carrier of some, or all, of the outlays by the carrier.” (Aff in partial opposition ¶ 50.) He states, in essence, that “the grant of attorney’s fees as reimbursement is absolutely permitted” {id. ¶ 50), only if the policy requires BSRB to indemnify its insurer, Travelers Insurance Company. He points out that the insurance policy between BSRB and Travelers has not been provided to the court and he argues that the court “cannot determine what amounts, if any, BSRB has expended as a consequence of its representation by McDonough Law, LLP and their attorneys” until the court obtains and reviews the policy. {Id. ¶ 52.) The ultimate relief he seeks on the motion is
*555 “that such portions of the [McDonough] Motion which seek an award of attorney’s fees for sums that were not expended by BSRB, nor required to be reimbursed by them, be denied in their entirety, or in the alternative, that a hearing be scheduled wherein the movants would testify, under oath, as to actual sums expended in the defense of the action against BSRB.” (Id. at 13.)
The court disagrees with Mr. Suarez’s contention and declines to conduct a hearing. The purpose of the fee award was to compensate BSRB for the costs incurred in defending itself against a frivolous action. The nature of the fee arrangement between BSRB and its counsel does not provide a basis upon which Mr. Suarez can escape enforcement of the attorney’s fee award. (See Mackler Prods., Inc. v Turtle Bay Apparel Corp., 153 F Supp 2d 504, 510 [SD NY 2001].)
A review of the case law regarding the award of attorney’s fees as a compensatory sanction has not revealed any reported decisions that address the effect of representation by counsel retained by the aggrieved party’s malpractice insurance carrier on the imposition of sanctions. In their reply affidavits, BSRB and McDonough Law present Mackler Prods., in support of their contention that Mr. Suarez should pay for McDonough Law’s legal services as part of the fee award, “regardless of whether there is a carrier or not.” (Reply aff of Diane K. Kanca ¶ 9.) Although Mackler Prods, is distinguishable from the present case, the court finds it to be persuasive authority.
Mackler Prods, involved the imposition of compensatory sanctions against counsel for three of the defendants in that case, because counsel was found by the court to have “multiplied the length and complexity of the proceedings — the trial, the post-trial motions, the sanctions hearing, and the appeals on the merits and, of course, on the sanctions” by his use of perjured testimony at trial and his subornation of perjury. (153 F Supp 2d at 509, 511.) Challenging the court’s imposition of sanctions, counsel argued that “plaintiff suffered no damages as a result of the perjury — and, thus, he should pay no compensatory sanctions — because plaintiff had a contingency fee agreement with its attorney, which ‘mean[t] that the fees it paid . . . were tied only to its ultimate recovery.’ ” (Id. at 510 [omitting citation to defendant’s mem].) Counsel claimed that he should not be required to pay the compensatory sanctions of the plaintiff s attorney’s fees, because the plaintiff incurred no additional expense to address the perjured testimony. (Id.)
*556 Mr. Suarez makes a similar argument in this case. Essentially, his contention is that he should not be required to pay the portion of the fee award for McDonough Law’s services, because BSRB did not actually expend those fees, which were instead paid by BSRB’s insurance carrier. Mackler Prods, is instructive in addressing this point, because the sanctions in both cases are compensatory and they are based upon attorney’s fees that in some sense were not actually incurred by the aggrieved party to whom they were awarded. In explaining the policy which underlies compensatory sanctions, the court stated that compensatory sanctions are intended to compensate the aggrieved party for the sanctioned party’s conduct. “Thus, the sanction ‘should correspond at least to some degree with the amount of damages.’ ” (Id. at 507, citing King v Allied Vision, Ltd., 65 F3d 1051, 1062 [2d Cir 1995], citing New York State Natl. Org. for Women v Terry, 886 F2d 1339, 1353 [2d Cir 1989].) However, when such sanctions are awarded based upon their compensatory aspect rather than their coercive aspect, the aggrieved party is not always required to show “actual pecuniary loss.” (Id., quoting Manhattan Indus., Inc. v Sweater Bee by Banff, Ltd., 885 F2d 1, 5 [2d Cir 1989].)
The court in Mackler Prods. stated that sanctions also address systemic concerns, such as the smooth functioning of the courts and the harm to participants in the process when a litigant fails to adhere to the rules and conduct of litigation. (Id. at 510, quoting Anderson v Beatrice Foods Co., 900 F2d 388, 394-395 [1st Cir 1990].) Under such circumstances, “ ‘[s]anctions, then, can have a contrapuntal effect, adjusting the scales so that the extra time, effort, and expense to party “A” which occurs in consequence of the dereliction of party “B” can be repaid in some equitable fashion.’ ” (Id.)
Applying the same reasoning, this court holds that BSRB was not required to show “actual pecuniary loss” resulting from the frivolous claim Mr. Suarez brought against it in action No. 3. Notwithstanding that McDonough Law’s attorney’s fees were paid by BSRB’s malpractice insurance carrier, BSRB was “harmed” by the filing of the claim against it and should be compensated for same. BSRB was required to report the claim brought against it to its malpractice carrier, which incurred legal fees to defend BSRB against the claim. As a result, BSRB was put at risk of its premiums being increased by its carrier, or of its coverage being dropped altogether. In addition, while the claim against BSRB was pending, BSRB’s ability to vigorously *557 defend the Foundry and advance the proceedings in action No. 1 was impaired. Furthermore, the time that Gardiner Barone could have devoted to other business was instead diverted to the representation of his firm, resulting in a loss of profits to the firm.[8] The risks and consequences of Mr. Suarez’s frivolous claim against BSRB go far beyond the amount of attorney’s fees required to defend it. The fact that BSRB was represented, in part, by counsel obtained and paid for by its malpractice carrier should not inure to Mr. Suarez’s benefit.
The court notes a further consideration that was raised in Mackler Prods, which is relevant here, because Mr. Suarez is an attorney. That is, the “strong public interest in ensuring that an attorney’s conduct does not threaten the administration of justice and the integrity of the judicial process.” {Id. at 511 [citations omitted].) Mr. Suarez’s conduct herein may not have risen to the same level of severity as the conduct at issue in Mackler Prods., which involved the use of perjured testimony and subornation of perjury, but it does implicate the same concerns for safeguarding the administration of justice and the integrity of the judicial process. The Rules of Professional Conduct (22 NYCRR 1200.0) expressly prohibit an attorney from engaging in conduct prejudicial to the administration of justice (see rule 8.4 [d]); filing a suit, asserting a position, conducting a defense, delaying a trial or taking other action on behalf of a client when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another {see rule 3.1 [b] [2]); and knowingly advancing a claim or defense that was unwarranted under existing law and which could not be supported by a good faith argument for an extension, modification or reversal of existing law {see rule 3.1 [b] [1]). In bringing his claim against BSRB, Mr. Suarez flouted these disciplinary rules. His conduct in that regard warrants adjusting the scales to compensate BSRB for the harm caused by his actions.
Accordingly, the court awards BSRB the attorney’s fees and costs associated with McDonough Law’s defense of BSRB. As previously noted, Mr. Suarez does not object to the hourly rate or the amount of time billed, which the court finds to be reasonable. Indeed, McDonough Law’s hourly rate of $230 is clearly reasonable in light of the extensive experience of both counsel from that firm in the relevant field and by comparison to hourly *558 rates in the region for attorneys of comparable skill and experience. In addition, McDonough Law carefully adjusted the amount of fees sought to factor out its learning curve, although not required, and to avoid any overlap between its services and those provided by BSRB to defend itself. Upon review, the items billed appear to be reasonable, as are the disbursements. Therefore, the full amount of McDonough Law’s fees and costs in the sum of $9,046.80 is awarded.
Gardiner Barone’s Services
Mr. Suarez also contends that BSRB should not recover attorney’s fees for the services expended by Gardiner Barone, because he was not “the lawyer of record in this action.” (Aff in partial opposition ¶ 47.) Mr. Suarez argues that Mr. Barone functioned as “BSRB’s liaison ... to its attorney of record,” and functioned in a similar capacity as “in-house counsel” of a corporate client. (Id. ¶¶ 23, 24.) Presumably, Mr. Suarez’s claim is that BSRB cannot be both the client and the lawyer. In addition, Mr. Suarez takes issue with BSRB’s billing for Lexis charges and requests a hearing to resolve a perceived discrepancy in the billing for that service.
In arguing for BSRB’s recovery of fees for Mr. Barone’s services, Ms. Kanca characterizes Mr. Barone as “functionally, ‘of counsel’ to us in this matter, and he should be awarded compensation for his extensive time and effort.” (Notice of motion, Diane K. Kanca aff of legal services ¶ 22.) Ms. Kanca states that “Mr. Barone performed the lion’s share of the research . . . and . . . [h]ad he not done this work, then [McDonough Law] would have been required to spend the time Mr. Barone spent researching and drafting the papers that were submitted on the application to dismiss.” {Id.)
An attorney who represents himself may recover fees for “ ‘the professional time, knowledge and experience . . . which he would otherwise have to pay an attorney for rendering.’ ” (Parker 72nd Assoc. v Isaacs, 109 Misc 2d 57, 59 [Civ Ct, NY County 1980], quoting Kopper v Willis, 9 Daly 460, 469 [1881]; cf. Gray v Richardson, 251 AD2d 268 [1st Dept 1998] [awarding “pro se attorneys’ fees under (Delaware’s General Corporation Law)”], lv denied 92 NY2d 815 [1998].) Although BSRB’s insurer retained counsel to represent BSRB, BSRB jointly defended the action and provided legal services on its own behalf which were not provided by retained counsel. A review of BSRB’s “sample” invoice itemizing Mr. Barone’s services shows that the hours itemized were for legal services. (Notice of mo *559 tion, exhibit D.) During those times, Mr. Barone did not render assistance in the capacity as the client or as liaison to Mc-Donough Law; instead, he used his professional time, knowledge and experience to defend his firm. Accordingly, BSRB is entitled to recover those fees and costs.
The court does not find persuasive Mr. Suarez’s contention that the charges for Lexis services require a hearing. The billing for the cost of Lexis, as explained in Mr. Barone’s affidavit, is based upon prorating the firm’s monthly flat fee for access and is not specifically attributable to time spent researching on particular days. Further, as Mr. Barone explains in his reply affidavit, BSRB did not request reimbursement for all of its Lexis charges. The time entries for July 18 and 19, 2013 do reflect research performed on those days, which Mr. Suarez acknowledges were not the only days on which Mr. Barone conducted research. Therefore, the absence of “research” in the descriptions for July 21 and 22, 2013 seems inconsequential. Overall, the charges for which BSRB seeks recovery appear to be reasonable and are therefore included in the fee award.[9] Therefore, the full amount of BSRB’s fees and costs in the sum of $20,930.90 is awarded.
All other arguments not specifically addressed herein have been considered and rejected by the court. It is therefore ordered that Mr. Suarez shall pay BSRB the full fee award of $29,977.70 within 45 days of this decision and order. BSRB shall reimburse Travelers Insurance Company $9,046.80, representing the portion of the fee award for McDonough Law’s services. It is further ordered that Mr. Suarez shall pay to the client security fund the $10,000 sanction previously imposed upon him in the court’s August 23, 2013 decision and order within 45 days of this decision and order.

. Section 130-1.1 (a) provides that
“[t]he court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees, resulting from frivolous conduct as defined in this Part.”

. Section 130-1.1 (c) provides that
“conduct is frivolous if:
“(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification *553 or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass, or maliciously injure another; or (3) it asserts material factual statements that are false.”

. Although the court awarded attorney’s fees for both the motion to consolidate and the motion to dismiss, BSRB does not seek recovery of the fees expended in moving to consolidate the actions.

. At the time the motion to dismiss action No. 3 was brought, both Diane Kanca, Esq. and Howard Jacobowitz, Esq. were partners of the law firm of McDonough Law, LLP. They are now both presently partners of the law firm of Voute, Lohrfink, Magro & McAndrew, LLP.

. Mr. Suarez brought a motion by order to show cause, seeking to reargue and renew the court’s imposition of sanctions against him in the sum of $10,000, payable to the client security fund, which is separate from the *554 compensatory sanction of attorney’s fees to BSRB addressed herein. The court declined to sign the order to show cause submitted by him.

. Mr. Suarez also does not contest the timeliness of the motion, which was delayed due to the court’s imposition of a 60-day stay to accommodate Mr. Suarez’s medical needs.

. Oddly, Mr. Suarez complains about billings redacted from McDonough Law’s submission, claiming that the court must “conduct an In Camera [sic] review of the un-redacted bill to ascertain its propriety.” (Aff in partial opposition ¶ 50.) As McDonough Law points out, its redacted entries redound to Mr. Suarez’s benefit by lowering the amount of fees requested. Ms. Kanca explains in her reply affidavit that McDonough Law declined to seek fees for the time it took herself and Mr. Jacobowitz to get up to speed on the cases. The court declines to grant Mr. Suarez’s request to conduct an in camera review of McDonough Law’s un-redacted billing, as it sees no purpose to be served by such an undertaking.

. This element of “harm” is specifically discussed later in connection with the award of fees to BSRB for the partner’s time.

. Although the court does not condone the billing errors regarding these charges, once again, the claimed omission of charges, which Mr. Suarez readily acknowledges, are to his benefit.