CLD-093                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3608

_____

MARKOS PAPPAS,
Appellant

v.

WARDEN ALLENWOOD USP

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 12-cv-02070)
District Judge:  Honorable Christopher C. Conner

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 5, 2013
Before:  FUENTES, JORDAN and SHWARTZ, Circuit Judges

(Opinion filed:  December 10, 2013)

_____

OPINION

_____

PER CURIAM

        Pro se appellant Markos Pappas, a federal inmate, appeals the District

Court's denial of his habeas petition filed pursuant to 28 U.S.C. § 2241.  Because the

appeal fails to present a substantial question, we will summarily affirm the District

Court's judgment.  See 3d Cir. LAR 27.4 & I.O.P. 10.6.

Because the parties are familiar with the facts, we only briefly summarize them here. On August 19, 2010, a prison official discovered a cell phone concealed in the wall behind a toilet in Pappas' cell. That same day, Pappas was charged with "Possession of a Hazardous Tool" ("Incident One"). He received a copy of the incident report, and after a subsequent hearing before the Unit Discipline Committee ("UDC"), the charges were referred to a Disciplinary Hearing Officer (DHO). After a hearing before the DHO, it was determined that Pappas had committed the act of "Attempting or Aiding Another Person to Possess a Hazardous Tool." His sanctions included, inter alia, 27 days disallowance of good conduct time.

Approximately six months after the first incident, on February 2, 2011, Pappas was charged again. That evening, he did not receive a complete meal and, when his efforts to obtain one were unsuccessful, Pappas covered his cell door window and began kicking the door to create a "minimal" disturbance. As a result of his actions, Pappas received his complete meal as well as two separate disciplinary actions. Incident Report No. 2120141 ("Incident Two") charged Pappas with "Interfering With, Improperly Using Any Security Device or Procedure" and "Refusing an Order," and Incident Report No. 2119655 ("Incident Three") charged him with "Encouraging Others to Riot," "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution or the Bureau of Prisons, Most like a 106" and "Refusing an Order." He received a copy of the incident reports, and after hearings before the UDC, the charges were referred to a DHO. For Incidents Two and Three, the DHO determined that Pappas had committed the violations of (1) "Encouraging a Group Demonstration," (2)

2

"Interfering with a Security Procedure" and (3) two acts of "Refusing an Order." The resulting sanctions included, inter alia, the disallowance of 27 days of good conduct time and the forfeiture of 27 days of non-vested good conduct time.

Pappas filed his § 2241 petition alleging that he was denied due process of law in his disciplinary hearings. As relief, he sought expungement of his disciplinary records and restoration of his good time credits, or an order directing the Bureau of Prisons (BOP) to conduct re-hearings on the actions. The District Court denied Pappas' petition, and this appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Section 2241 is the appropriate vehicle for constitutional claims when a prison disciplinary proceeding results in the loss of good time credits. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008). We exercise plenary review over the District Court's denial of habeas corpus, but review factual findings for clear error. See Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

Federal prisoners have a liberty interest in statutory good time credits. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see also 18 U.S.C. § 3624(b)(1). Thus, when a disciplinary hearing may result in the loss of these credits, an inmate must receive: (1) written notice of the charges at least 24 hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; and 4) a written statement of the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 563-71. "[R]evocation of good time does not comport with the minimum requirements of

3

procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (internal quotation marks and citation omitted). This standard is minimal and does not involve the independent assessment of witness credibility or re-weighing of evidence by the federal courts. See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989). Rather, the relevant inquiry asks whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

We agree with the District Court that Pappas received due process during his disciplinary proceedings as required by Wolff and Hill, and that there was sufficient evidence to support the DHO's decisions.[1]

Pappas argues that the basis for the sanction in Incident One is inaccurate. The incident report indicates that after the phone was discovered, Pappas stated, "It is mine." At the hearing before the UDC, Pappas denied that the phone belonged to him, and claimed that it belonged to Dingo Ospina, a former cell mate. The DHO's report indicates that, when given the chance to provide a statement, Pappas stated, "I'm not guilty. It was not my cell phone. It was my cellies. He was caught the day before. I'm not going to just tell them he had another phone. I did not have access to it. It was secured behind the toilet where I could not get to it." Pappas maintains that he never made this statement and that it was in fact stated by another inmate related to his own disciplinary incident, and had been "cut and paste[d]" into Pappas' report. Pappas'

---

[1] The District Court properly determined that Pappas had exhausted his administrative remedies prior to filing his petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).

4

unsupported statement in his petition that he did not make these statements is insufficient to overcome the documentary evidence to the contrary. Both the incident officer and the DHO officer report that Pappas admitted to either owning the phone or knowing of its existence. The officers' statements were provided under penalty of perjury and Pappas has provided no evidence to suggest that their statements are false. Although Pappas denies claiming ownership of the phone, the Hearing Officer could have found the incident officer's statement to be credible. Therefore, there is at least some evidence in the record to support the determination that Pappas had committed a disciplinary violation. See Hill, 472 U.S. at 457 (relief is warranted only where the record is "so devoid of evidence that the findings of the [Hearing Officer] were . . . arbitrary.").

There is no merit to Pappas' claim that he was denied an exculpatory witness. "The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available." See 28 C.F.R. § 541.8(f)(2). Pappas had requested to have Ospina appear as a witness at his hearing; he maintains that Ospina would have testified that the cell phone belonged to him, not Pappas. The DHO report indicates that Ospina could not be called as a witness because he had been released from custody several weeks earlier. The "requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available." 28 C.F.R. § 541.8(f)(3). Ospina, who had been released, was not "reasonably available." Contrary to Pappas assertions, the DHO is not mandated to request written statements from unavailable witnesses. See 28 C.F.R. § 541.8(f)(4). Moreover, according to the record, Pappas signed the report indicating that

5

he wished to proceed in Ospina's absence.[2]  We note further that, even if Ospina testified

that the phone was his, it would not necessarily negate the DHO's conclusion that Pappas

had "Attempt[ed] or Aid[ed] Another Person to Possess a Hazardous Tool."  For this

reason, there is also no merit to his claim that he was prejudiced by the delay in the

proceedings.[3]

Finally, there is no merit to Pappas' assertion that the DHO failed to

consider his justification defense with respect to his actions in Incidents Two and Three.

The DHO reports explicitly state that after admitting he engaged in the charged conduct

at the DHO hearings (which were held back-to-back), Pappas was informed that

committing a prohibited act is never justified.  The regulations adopted by the Bureau of

Prisons do not recognize a "justification" defense.  Moreover, the fact that he was not

permitted to assert that defense does not rise to the level of a constitutional violation.  See

Wolff, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings does not

apply.").  There was clearly enough evidence in the record to support the charges in these

Incident Reports and, as the Magistrate Judge thoroughly set forth in his opinion, Pappas

was afforded all of the process due.

---

[2] Because Pappas was handcuffed, a witness signed the report on his behalf.
[3] We further note that there was no meaningful delay in the proceedings attributable to the defendant.  The disciplinary proceedings were initially delayed because the matter was referred to the Federal Bureau of Investigation (FBI) for possible criminal charges.  On December 28, 2010, the FBI decided not to prosecute and the case was released for administrative processing.  The UDC proceedings were held less than a week later, with a slight postponement because of the holiday schedule and a weekend.

Accordingly, because no "substantial question" is presented as to the denial of the § 2241 petition, we will summarily affirm the judgment of the District Court. <u>See</u> 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6.