# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darnell Thomas, : 
                  Petitioner : 
                       : 
             v. : No. 617 M.D. 2018
                       : Submitted: June 7, 2019
Pennsylvania Department of : 
Corrections, Corrections Officer B. : 
Shaffer, Lt. M. Thomas, Capt. : 
Bradley Sheeder, Capt. Harding, and : 
Hearing Examiner Frank Nunez, in : 
their individual and official capacities, : 
                 Respondents :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: November 22, 2019**

Before this Court in its original jurisdiction are the preliminary objections (POs) of the Pennsylvania Department of Corrections (DOC), and Corrections Officer B. Shaffer (CO Shaffer), Lt. M. Thomas (Lt. Thomas), Capt. Bradley Sheeder (Capt. Sheeder), Capt. Harding, and Hearing Examiner Frank Nunez (Hearing Examiner) (collectively, Employee Respondents) to the Petition for Review (Petition) filed by Darnell Thomas, who is currently incarcerated within DOC. In the Petition, Thomas avers that, while he was incarcerated at the State Correctional Institution at Pine Grove (SCI-Pine Grove), Employee Respondents were responsible for violating a number of Thomas's constitutional rights, including

his rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.[1] (Petition ¶ 11.)

## I. The Petition

The Petition alleges the following. CO Shaffer is a corrections officer employed at SCI-Pine Grove who "was assigned to administer, collect, post, and retrieve the results of[] urinalysis[] tests." (*Id.* ¶ 3.) Lt. Thomas, Capt. Sheeder, and Capt. Harding are security officers at SCI-Pine Grove. (*Id.* ¶¶ 4-6.) Capt. Sheeder directly supervises Lt. Thomas. (*Id.* ¶ 19.) Hearing Examiner is employed as a hearing examiner at SCI-Pine Grove. (*Id.* ¶ 7.) Because they were all employed by SCI-Pine Grove, Employee Respondents were "operating under the color of state law at all times relevant." (*Id.* ¶ 10.)

On September 20, 2017, CO Shaffer required Thomas to provide a urine sample, Thomas did so in a video monitored cell located in SCI-Pine Grove's medical annex, and this area is subject to additional surveillance and observation. (*Id.* ¶ 13.) Pending the results of the urine test, Thomas was placed in Administrative Custody. (*Id.* ¶ 14.) Nine days later, CO Shaffer issued a misconduct against Thomas, which referenced a positive urine test result; a copy of the misconduct is attached to the Petition. (*Id.* ¶ 15.) In the misconduct report, CO Shaffer indicates that he was the lone administrator of Thomas's urine test and does not mention any other witnesses or participants except for a consulting prison nurse. (*Id.*) However,

---

[1] The Eighth and Fourteenth Amendments to the United States Constitution, respectively, state, in relevant part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amends. VIII, XIV, § 1. Although Thomas references article I, section 1 of the Pennsylvania Constitution in paragraph 11 of the Petition, he does not allege how this provision was violated.

"[u]pon information and belief, the urinalysis result in this matter was obtained by . . . [Lt.] Thomas in his capacity as security officer," "he is the designated person to receive same," and he was "the individual whom [sic] supplied the report to" Hearing Examiner. (*Id.* ¶ 19.) Hearing Examiner held hearings on this misconduct report on October 3 and 5, 2017, at which CO Shaffer did not appear. (*Id.* ¶ 16.) Hearing Examiner's Report is attached to the Petition. (*Id.*) During the hearings, Thomas asked to review the urinalysis report and the video footage from the medical annex where the urine test was given, but was not provided an opportunity to do so because, per Capt. Harding's testimony, the video footage "did not exist." (*Id.* ¶¶ 18, 20.) Following the hearings, Hearing Examiner found that Thomas had "ingested a dangerous or controlled substance [(synthetic cannabinoids or K2)] based solely on . . . [CO] Shaffer's misconduct report," found Thomas guilty, and, as punishment, removed Thomas from the general population and gave Thomas 30 days' confinement in Disciplinary Custody. (*Id.* ¶¶ 17, 20.) Thomas appealed the misconduct, which was denied at every step. (*Id.* ¶ 21; Appeal Exs.) In those appeals, Thomas asserted a different corrections officer obtained a second urine test from Thomas, left the room without sealing the sample, was outside of Thomas's view for a period of time, returned to the room, and then sealed the sample. (Petition, Appeal Exs.)

Thomas "was shocked that the result was positive for any substance as he had not done any act which could have caused such a result." (*Id.* ¶ 22.) Accordingly, Thomas avers that his result was either tampered with, adulterated, or "miscollected," and argued this at his hearing and in his appeals. (*Id.* ¶ 23.) He contends "he has developed specific and credible information which explains the urinalysis failure," namely that he contacted the testing company which indicated

that it had "never received, tested[,] nor sent results for any sample from" Thomas. (*Id.* ¶¶ 24-25.) Thomas will file this proof with the Court, but had it sent elsewhere for fear that he would suffer "further reprisal" if it had been sent to the prison. (*Id.* ¶ 25.)

Thomas contends the reason Hearing Examiner, "and others," would not let him examine the lab report reflecting the alleged positive result is that the lab report did not exist and/or was fabricated. (*Id.* ¶ 26.) When Thomas asserted his claims to DOC's Office of Special Investigations and Intelligence, an investigation was opened, and that office contacted SCI-Pine Grove. Thereafter, "unknown actors in . . . SCI-Pine Grove did FAX [sic] a copy of [the] misconduct Report with a copy of a positive lab report counterfeited to include [Thomas's] information" which resulted in the cessation of any further investigation into the matter. (*Id.* ¶ 26.)

Thomas asserts that, as a direct result of these actions, he did not receive adequate medical treatment on two occasions – one related to a seizure and the second to a severe electrical burn. (*Id.* ¶ 27.) With regard to the seizure, Thomas maintains that the seizure was so severe that he had to be taken to the local hospital but that he has not received any follow-up care to determine the cause of the seizure. (*Id.* ¶ 27a.) As for the electrical burn, Thomas contends it was serious enough to change his skin color while medical staff watched and that, despite his complaints of pain, the only treatment he received at the time was the staff taking a picture and questioning him about possible drug use. (*Id.* ¶ 27b.) While he was initially taken to the medical annex, where he was subjected to another urinalysis test, he was released untreated. (*Id.*) Six days later, after the pain in his leg had worsened, he was taken to the medical annex for treatment, was placed on a burn protocol, and received treatment over the next two weeks. (*Id.*) Thomas further alleges his mail

4

has been subject to delay and investigation since he has filed his legal actions. (*Id.* ¶ 28.)

Based on these facts, Thomas avers the following: (1) DOC and Employee Respondents have violated his due process rights because, at the hearing, Thomas was not allowed to see or challenge the urinalysis report, if that report was even in Hearing Examiner's possession (*id.* ¶ 29); (2) his due process rights were further violated by Employee Respondents "manufacturing or otherwise pretending a positive drug test result existed when one did not" (*id.* ¶ 30); (3) DOC and Employee Respondents were on notice that due process requires a fair hearing and that manufacturing evidence would violate this requirement (*id.* ¶ 31); (4) Hearing Examiner violated Thomas's constitutional rights by not holding a fair hearing and not following due process where there was no reason not to provide Thomas with the urinalysis report's results (*id.* ¶ 32); and (5) Thomas "is entitled to adequate and timely medical care and [Employee] Respondents['] actions have caused medical staff to delay, or wit[h]hold, needed medical treatment(s)," (*id*. ¶ 33). Through these actions, Thomas avers, DOC and Employee Respondents have: "intentionally inflicted emotional distress upon him"; created a stigma against him and he is considered a drug addict and/or a drug dealer, which results in additional investigations of him; caused his professional license renewal fee not to be paid resulting in his license becoming in arrears and his being in bad standing with the Department of State, Bureau of Occupational Affairs; caused him to lose his skilled position due to the non-renewal of his license; and caused him to have increased custody levels, lose the ability to have contact visitation, and lose credit toward a transfer to a different prison. (*Id.* ¶¶ 34-37.) Thomas alleges Employee Respondents

were aware that their actions would result in the above-referenced events, which reflects their "malicious intent." (*Id.* ¶ 37.)

As relief, Thomas requests that his prison job, pay grade, and professional licensure be fully restored and he be paid lost wages. (*Id.* ¶ 38.) He asks that the erroneous and/or fabricated information be removed from his files. (*Id.* ¶ 39.) Thomas argues he is entitled to compensation for his losses "in an unliquidated amount to be determined at trial." (*Id.* ¶ 41.) Further, he seeks punitive damages as Employee Respondents' actions, whether they conspired or acted alone, were intentionally outrageous and were performed with clear purpose. (*Id.* ¶ 42.) Thomas ends with asking for an injunction against the DOC, and its sub-offices and officers, prohibiting any retaliatory action against him in any way. (Wherefore Clause.)

## II.    Preliminary Objections and Answer

DOC and Employee Respondents filed POs to the Petition, asserting[2] Thomas has failed to state claims upon which relief can be granted because the Petition: (1) lacks sufficient details regarding the alleged violation of the Eighth Amendment and fails to connect those allegations to any of Employee Respondents, who are not medical staff; (2) fails to state a due process claim related to how the institutional hearing on his misconduct was held; (3) fails to sufficiently allege a claim for interference with Thomas's mail; and (4) does not specifically allege the personal involvement in the constitutional violations by CO Shaffer, Lt. Thomas, Capt. Sheeder, and Capt. Harding. Thomas filed an Answer responding to each contention set forth in the POs and denying the ultimate conclusions of each PO. In his Memorandum of Law in Opposition to the POs (Brief), Thomas includes numerous additional factual averments and exhibits in response to the deficiencies asserted in

---

[2] We have rearranged the arguments for ease of resolution.

6

the POs, as well as a claim that his legal mail and access to the courts were being delayed and interfered with in retaliation for his seeking legal redress. We now address each demurrer.

### III. Analysis

*A. Standard for Reviewing POs in the Nature of a Demurrer*

"[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings." *Cardella v. Pub. Sch. Emps.' Ret. Bd.*, 827 A.2d 1277, 1282 (Pa. Cmwlth. 2003). "In ruling on preliminary objections, the Court must accept as true all well pleaded allegations of material fact as well as all of the inferences reasonably deducible from the facts pleaded." *Smith v. Pa. Emps. Benefit Tr. Fund,* 894 A.2d 874, 881 (Pa. Cmwlth. 2006). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Highley v. Dep't of Trans.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). To sustain preliminary objections, "it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party by refusing to sustain the objections." *Smith*, 894 A.2d at 881.

*B. Failure to State an Eighth Amendment Claim*

DOC and Employee Respondents contend that the Petition fails to plead with any specificity a prima facie claim for an Eighth Amendment violation for deliberate indifference. The Petition merely indicates, they argue, that, "at some unspecified date[s] and time[s]" Thomas suffered a seizure and "a severe electrical burn for which he received substandard emergency . . . [and] follow-up treatment." (PO ¶¶ 39, 50.) Such vague allegations, which do not connect the alleged substandard

7

medical treatment to any of the named Employee Respondents, none of whom are medical staff, they argue, do not meet the applicable pleading standard for an Eighth Amendment claim under *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). (PO ¶¶ 42-45, 56.) They further argue the Eighth Amendment claim is legally deficient because the factual allegations themselves indicate that Thomas was, in fact, provided medical care, including a transfer to a local hospital and the use of burn protocol that meets the Eighth Amendment standard. (*Id.* ¶¶ 53-55.)

In his Answer, Thomas denies that his Petition is deficient and does not state an Eighth Amendment claim. In his Brief, Thomas asserts additional facts regarding the alleged deliberate indifference to his medical conditions, including dates, times, the names of the medical personnel involved, and why he believes Employee Respondents, particularly Lt. Thomas, influenced the treatment, or non-treatment, of these injuries.

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain" based on the "deliberate indifference to serious medical needs of prisoners." *Estelle*, 429 U.S. at 104. In *Tindell v. Department of Corrections*, 87 A.3d 1029, 1038-40 (Pa. Cmwlth. 2014) (footnote omitted), we explained the standard for reviewing these Eighth Amendment claims, stating:

> claims of negligent diagnosis or treatment, disagreement as to the course of treatment, and medical malpractice do not rise to the level of a constitutional violation merely because the patient is a prisoner. [*Estelle*, 429 U.S.] at 106 . . . . Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106 . . . .

8

Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry. *Id.* at 106–107 . . . ; *Farmer v. Brennan*, 511 U.S. 825, 834 . . . (1994). Common factors relied upon by the courts to determine if a medical need is sufficiently serious to fall within the ambit of the Eighth Amendment include whether the medical need is: (i) one that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that causes chronic and substantial pain. . . .

In addition to satisfying the objective component of an Eighth Amendment claim, a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated. In *Farmer v. Brennan*, the Supreme Court concluded that the inquiry into whether a prison official was deliberately indifferent is a subjective one, requiring the demonstration of a state of mind akin to criminal recklessness, and held that a prisoner must establish that: (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference. 511 U.S. at 837, 840 . . . . Examples of circumstances where a prison official has been found to act with deliberate indifference include where the prison official: (i) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (ii) delays necessary medical treatment based on a non-medical reason; (iii) prevents a prisoner from receiving needed or recommended medical treatment; or (iv) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury.

A non-physician defendant in an Eighth Amendment action cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints

9

when the inmate is receiving treatment by the prison's medical staff. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017).[3]

Reviewing and taking the facts pled in the Petition as true, Thomas has not stated a cognizable claim for a violation of the Eighth Amendment through the denial of medical care. Thomas's averments in the Petition do not provide any detail as to either his alleged seizure or electrical burn to establish a prima facie claim for relief. The averments identify no times or dates or location where the purported deliberate indifference occurred, nor do they explain how these Employee Respondents, who are not medical staff, were responsible for the alleged substandard medical treatment. Moreover, the Petition's averments do not allege that any prison official, let alone these Employee Respondents, "(i) . . . knew of and disregarded an excessive risk to inmate health or safety; (ii) . . . was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) . . . drew the inference" or that the alleged conduct violated "evolving standards of decency." *Tindell*, 87 A.3d at 1038-40 (internal quotation marks omitted).

Although Thomas attempts to add facts in his Brief, doing so is not proper because "[f]actual disputes are framed by pleadings, not briefs" and "additional allegations offered by an inmate through . . . [a] brief" should be rejected. *Thomas v. Corbett*, 90 A.3d 789, 800 (Pa. Cmwlth. 2014) (internal quotation marks and citation omitted). Even if the additional facts alleged were considered, it does not appear they would establish a prima facie case, as they suggest negligent treatment rather than deliberate indifference and do not establish how Employee Respondents

---

[3] "Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value. Unreported federal court decisions may also have persuasive value." *O'Toole v. Pa. Dep't of Corr.*, 196 A.3d 260, 271 n.15 (Pa. Cmwlth. 2018) (quotations omitted) (alteration in the original).

caused the alleged deliberate indifference toward Thomas's medical condition where he was, in fact, under the care of the medical officials. Thus, even if we were to allow Thomas the opportunity to amend the Petition, which he has not requested, such relief is not warranted because amendment would be futile. *Weaver v. Franklin County*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007).

Based on the Petition's allegations and any inferences reasonably deducible therefrom, which fail to allege a prima facie Eighth Amendment claim based on deliberate indifference, "it . . . appear[s] with certainty that the law will permit no recovery" on these claims. *Smith*, 894 A.2d at 881. Further, because allowing Thomas to amend the Petition with the new allegations asserted in his Brief would be futile, no such amendment is warranted. Therefore, we sustain this demurrer and dismiss this claim in its entirety with prejudice.

### C. Failure to State a Due Process Claim

DOC and Employee Respondents assert that Thomas fails to state a claim for a violation of his due process rights during the intra-institutional misconduct hearing because, notwithstanding Thomas's allegations, he received all the process he was due under *Wolff v. McDonnell*, 418 U.S. 539 (1974). (POs ¶¶ 34-35.) They contend that, under *Wolff*, Thomas had no constitutional right to confront or cross-examine witnesses during that hearing nor is the right to review the particular evidence against him guaranteed by *Wolff*. (*Id.* ¶¶ 35-36.) DOC and Employee Respondents question whether the urinalysis report itself would have been of value to Thomas, as he did not allege that he was qualified to interpret or refute the report's findings. (*Id.* ¶ 37.) They further maintain that Thomas cannot seek a declaration to have his misconduct declared void or an appeal of that misconduct determination in this Court because we lack jurisdiction over such claims. (*Id.* ¶ 33 n.3 (citing *Bronson v. Cent. Office*

*Review Comm.*, 721 A.2d 357 (Pa. 1998); *Brown v. Pa. Dep't of Corr*., 913 A.2d 301 (Pa. Cmwlth. 2006)).) Because Thomas received the process he was due for the intra-institutional misconduct hearing, DOC and Employee Respondents argue Thomas's due process claim must be dismissed.

Thomas denies that his due process claim is based only on his inability to review the urinalysis report at the misconduct hearing and that he received the required due process. (Answer ¶¶ 33, 36-38.) Thomas does not dispute the standard for due process set forth in *Wolff*, but argues there must be "some evidence" in the record to support a finding of misconduct pursuant to *Superintendent v. Hill*, 472 U.S. 445 (1985). Citing the allegations in the Petition and additional evidence he includes in or attaches to his Brief, Thomas argues the "some evidence" relied upon by Hearing Examiner to support the misconduct determination, the urinalysis report showing Thomas's positive result, did not exist and, if it did, was falsified. (Thomas's Brief (Br.) at 3-5.) Thomas maintains the urine sample taken from him on September 20, 2017, was never sent for testing, and Employee Respondents intentionally pretended there was a positive lab result to support the misconduct report and deny him his due process rights. (*Id.*) There being no actual evidence of his positive drug result to support the misconduct determination, Thomas argues his due process rights were violated. (*Id.* at 5.)

Reviewing and taking the facts pled in the Petition as true, Thomas has not stated a cognizable claim for a violation of due process rights under these circumstances. First, to the extent that Thomas's Petition can be read as a direct challenge to the misconduct determination, such challenges are not within this Court's jurisdiction, whether the challenge is filed in our original or appellate jurisdiction. *Edmunson v. Horn*, 694 A.2d 1179, 1181 (Pa. Cmwlth. 1997).

12

However, accepting Thomas's allegations as asserting a due process violation, rather than a direct appeal or attack on the misconduct determination, our review of those allegations reveals that Thomas has not stated a due process claim upon which relief can be granted.

Pursuant to *Wolff*, procedural due process requires that inmates charged with misconduct be provided: (1) a hearing by an impartial adjudicator; (2) written notice of the charges, provided at least 24 hours prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance if the charged inmate is illiterate or if complex issues are involved; and (5) a written explanation of the decision. 418 U.S. at 563-71. In *Hill*, the United States Supreme Court noted that "*Wolff* did not require either judicial review or a specified quantum of evidence to support the factfinder's decision" although it recognized that *Wolff* explained that a written record did help to assure that the administrators, who could face possible scrutiny from state officials and the public, would act fairly. *Hill*, 472 U.S. at 454. The Supreme Court in *Hill* then concluded that, in prison disciplinary matters, "'the minimum requirements of procedural due process[]' . . . [are not met] unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* at 455 (internal quotation marks and citation omitted). This Court has relied on both *Wolff* and *Hill* in determining whether an inmate has stated a due process claim upon which relief can be granted. *Melton v. Beard*, 981 A.2d 361, 364-65 (Pa. Cmwlth. 2009).

Per the Petition, Thomas received written notice of the charged misconduct on September 29, 2017, and the hearings on that misconduct were held more than

24 hours later on October 3 and 5, 2017. (Petition ¶¶ 15-16.) Although Thomas asserts he was not given the opportunity to review the urinalysis report or the video footage, he does not argue that he was otherwise prevented from presenting his defense or arguing against the evidence cited in the misconduct report, such as his contentions that the urine sample was tampered with or that the result was fabricated or falsified. (*Id.* ¶¶ 17-23, 26.) Finally, Thomas does not dispute that Hearing Examiner issued a written explanation for his decision, although Thomas challenges the factual foundation of that decision. (*Id.* ¶ 20.) Thus, Thomas's due process claims are premised on the use of the alleged non-existent or falsified urinalysis test results to support Hearing Examiner's determination that Thomas was guilty of the charged misconduct or, in other words, that there is not "some evidence" to support that determination.

The United States Court of Appeals for the Third Circuit has explained that "[p]ositive urinalysis results based on samples that officials claim to be [the inmate's] constitute **some** evidence of [the inmate's] drug use." *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) (emphasis in original). The Third Circuit clarified that challenges to the reliability of that evidence, there, a chain of custody challenge, would require a court to perform an "independent assessment" of the reliability of that evidence, which is not required by due process or *Hill*. *Id.* Moreover, an inmate's attack on the sufficiency or reliability of the "some evidence" relied upon in the misconduct determination does not "articulate facts amounting to constitutional significance." *Seymour/Jones v. Kane*, No. CIV A. 92-1486, 1993 WL 235919, at *4 (E.D. Pa. June 30, 1993). In *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002), the Third Circuit held "that, with respect to [a] misconduct hearing, due process is satisfied where an inmate is afforded an opportunity to be

14

heard and to defend against the allegedly falsified evidence and groundless misconduct reports." "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."[4] *Id.* at 654. We applied the standard set forth in *Mensinger* in *Nifas v. Sroka* (Pa. Cmwlth., No. 422 C.D. 2016, filed July 29, 2016), slip op. at 7-8,[5] in response to an inmate's claim that a misconduct report was falsified, and we do the same here in reviewing this demurrer.

Here, Hearing Examiner cited the positive results of the urinalysis report claimed to be Thomas's as evidence that Thomas violated DOC's policy against the use of dangerous or controlled substances. Thomas acknowledges that a written urinalysis report existed because it was sent to DOC's investigators in response to Thomas's complaints to DOC, although Thomas contends it was forged. (Petition ¶ 26.) The positive urinalysis report cited by Hearing Examiner is "some evidence" to support the misconduct determination. *Thompson*, 889 F.2d at 502 (emphasis omitted). That Thomas challenges the reliability and sufficiency of that evidence does not "articulate facts amounting to constitutional significance." *Seymour/Jones*, 1993 WL 235919 at *4. Thomas was afforded a hearing at which he had the opportunity to confront and challenge the alleged falsified evidence and misconduct report and, per *Mensinger*, "that is all he was entitled to." 293 F.3d at 654. For these

---

[4] However, where prison disciplinary hearings or the alleged falsified misconduct reports or evidence are made "in retaliation for an inmate's resort to legal process," or exercise of some other constitutional right, such falsification is a violation of due process and/or the underlying constitutional right. *Mensinger*, 293 F.3d at 653-54. The Petition contains no allegation that the initial misconduct report and disciplinary proceedings were made in retaliation of Thomas's exercise of a constitutional right.

[5] Although not binding, unreported opinions of this Court may be cited for their persuasive value pursuant to Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

reasons, "it . . . appear[s] with certainty that the law will permit no recovery" on Thomas's due process claims, and, therefore, we sustain the demurrer and dismiss those claims in their entirety with prejudice. *Smith*, 894 A.2d at 881.

> D. *Failure to State a Claim Based on Interference with Legal Mail/Access to Court*

DOC and Employee Respondents assert the "nominal claim regarding the processing of his mail" set forth in the Petition should be dismissed because the Petition "provides almost no identifying information associated with this claim and makes no effort to impugn liability for his mail delays upon . . . [Employee] Respondents . . . ." (POs at 8 n.4.) Thomas, in the Petition, pleads that his "mail has been subject to delay and investigation since seeking civil redress." (Petition ¶ 28.) He provides no further facts in his Petition to support this claim. In his Brief, Thomas adds six pages of new factual allegations, plus exhibits, describing an instance where he contends his legal mail, a complaint filed under 42 U.S.C. § 1983, which was to be mailed to the United States District Court of the Western District of Pennsylvania, was delayed and interfered with, likely at the behest of Capt. Sheeder, resulting in the mail being returned to sender. (Thomas's Br. at 15-20.) Not contained within these new factual allegations is any averment that Thomas was actually harmed by that delay and interference or any particular request for relief as a result of this alleged constitutional violation.

In order to state a cognizable claim for a violation of the First Amendment of the United States Constitution[6] based on the interference with an inmate's mail and/or access to the courts, the inmate has to establish, among other things, that the

---

[6] The First Amendment to the United States Constitution states, in pertinent part, that "Congress shall make no law . . . abridging . . . the right of people to . . . petition the Government for a redress of grievances." U.S. CONST., amend. I.

16

interference resulted in an actual injury, that is, that the inmate's efforts to adequately pursue the legal claim were hindered in a specific manner. *Jones v. Doe*, 126 A.3d 406, 408-09 (Pa. Cmwlth. 2015); *Arnold v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 86 M.D. 2013, filed Jan. 28, 2014), slip op. at 8-9. *See also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (an inmate must show actual injury resulted from the alleged interference with an inmate's access to the court). Such injury could include the dismissal of a complaint or that the inmate was precluded from even filing a complaint. *Arnold*, slip op. at 9 (citing *Lewis*, 518 U.S. at 349).

Reviewing and taking the facts pled in the Petition as true, Thomas has not stated a cognizable claim for a violation of the First Amendment. The Petition is devoid of any factual allegations regarding the alleged delay and investigation of Thomas's mail, whether any injury arose therefrom, or any requested relief for this claim. Instead, it contains a single conclusory statement that his "mail has been subject to delay and investigation since seeking civil redress." (Petition ¶ 28.) Thomas attempts to add facts to this matter in his Brief, but those facts are not properly before the Court as we are examining the pleadings. *Thomas*, 90 A.3d at 800. Even if they were, there is no allegation of any actual injury or request for relief particular to this claim. Based on the Petition's allegations and any inferences reasonably deducible therefrom, which fails to allege a prima facie First Amendment claim based on the interference with Thomas's mail and access to the courts, "it . . . appear[s] with certainty that the law will permit no recovery" on these claims. *Smith*, 894 A.2d at 881. Therefore, we sustain this demurrer and dismiss this claim.

17

*E. Lack of Personal Involvement*

Last, CO Shaffer, Lt. Thomas, Capt. Sheeder, and Capt. Harding argue that Thomas has not stated claims against them because the Petition does not allege that they were personally involved in violating Thomas's constitutional rights. However, because we dismiss the Petition based on sustaining the other demurrers, this demurrer is dismissed as moot.

## IV. Conclusion

Because the Petition fails to state claims for the violation of Thomas's rights to due process and to be free from cruel and unusual punishment upon which relief can be granted, we sustain the POs filed by DOC and Employee Respondents and dismiss the Petition on those bases with prejudice. We also sustain the PO to Thomas's claim based on the interference with his mail and access to the courts and dismiss the Petition as to this claim as well. The PO asserting the lack of allegations regarding the personal involvement of some of Employee Respondents is dismissed as moot.

 

_____
**RENÉE COHN JUBELIRER,** Judge

18

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Darnell Thomas, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 617 M.D. 2018 |
| | : | |
| Pennsylvania Department of | : | |
| Corrections, Corrections Officer B. | : | |
| Shaffer, Lt. M. Thomas, Capt. | : | |
| Bradley Sheeder, Capt. Harding, and | : | |
| Hearing Examiner Frank Nunez, in their | : | |
| individual and official capacities, | : | |
| Respondents | : | |

# O R D E R

**NOW**, November 22, 2019, the Preliminary Objections in the nature of a demurrer filed by Respondents to Darnell Thomas's Petition for Review are **SUSTAINED IN PART** and **DISMISSED AS MOOT IN PART** and the Petition for Review is **DISMISSED** in accordance with the foregoing opinion.

_____
**RENÉE COHN JUBELIRER,** Judge